## STEBBINS *v.* DUNCAN and Others.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

*Deed—Evidence—Record of Deeds.*

1. Suggestion of the death of a plaintiff in the record, and an order to make his devisees parties, is *prima facie* evidence of his death for the purposes of the trial.
2. The existence of a deed, and its destruction by fire being proven, it is competent for the party offering it to prove its contents by a witness who knows them.
3. It being shown that a paper produced is a copy of a lost deed (but without the official certificate), the copy is competent evidence.
4. The witnesses to a deed being dead, the execution of the deed is to be proven by proof of the handwriting of the subscribing witnesses.
5. When a deposition has been destroyed by fire, and a copy, admitted to be such, is offered in evidence, it is not sufficient to object that it has not been shown that the witness is dead, or is incompetent to testify, or that the deposition cannot be retaken. It should be also objected that the witness does not live in another State, or more than one hundred miles distant from the place of trial, in order to lay ground for excluding the copy.
6. In error the court can consider only the objections specifically taken at the trial.
7. The execution of the deed being proven according to law, slight proof of the identity of the grantor is sufficient. In tracing titles, identity of names is *prima facie* proof of identity of persons.
8. It is a general rule in the State of Illinois that when a person has executed two deeds for the same land, the first deed recorded will hold the title.
9. The deed under which the plaintiff claimed was not acknowledged and certified as required by the laws of Illinois to admit it to record. It was, however, recorded. A duly certified copy of this record, and a certified copy of the original memorandum of record were offered; and a witness testified that the deed was a copy of the original deed : *Held*, that under the decisions of the courts in Illinois, this was proof that such deed and memorandum were of record, so as to give notice to subsequent purchasers.

This was an action for the possession of real estate in Illinois, involving title. The plaintiffs claimed under a sale on execution in a judgment recovered by the United States against one Duncan. Duncan's title was derived from a deed from one Dunbar to one Prout, dated January 6th, 1818, and

recorded October 29th, 1838. The defendants claimed under a deed from Dunbar to one Frank, also dated January 6th, 1818, and entered for record June 18th, 1870.

The suit was begun in the name of one Morris, who died pending it. His death was suggested on the record, and at the trial proof of the probate of his will was offered as proof of his death. The first question was on the ruling of the sufficiency of the proof of this fact.

The original deed from Dunbar to Prout was witnessed by one Smallwood, who resided in Washington. Smallwood being dead, the execution of the deed was proved by depositions of persons residing in Washington to the genuineness of Smallwood's signature. The next question was as to the sufficiency of that proof without more complete proof than was offered of the identity of Dunbar.

The deposition and the original deed attached to it were destroyed in the great fire of Chicago. The next questions were as to the admissibility of a copy of the deposition, and as to its sufficiency to prove the signature of the witness.

The original deed was defectively acknowledged. It was, however, admitted to record. A certified copy of the record, and a certified copy of the original memorandum of the entry for record were produced, and a witness testified that the copy produced from the record was a copy of the original deed. The next question was as to the sufficiency of this proof to allow the deed to be read in evidence.

The last question discussed was as to the effect of the record of the deed to Prout upon the title derived through Frank.

The further details necessary for understanding the points decided are set forth in the opinion of the court. These are deemed to be sufficient for comprehending the points in the argument.

*Mr. John W. Ross* and *Mr. Geo. O. Ide* for plaintiff. I. The probate record was not competent evidence of Morris' death. *Life Insurance Company* v. *Tisdale*, 91 U. S. 238 ; *Carroll* v. *Carroll*, 60 N. Y. 121. The suggestion of the death did not relieve the plaintiffs below from the necessity of proving it. *Milliken* v.

*Marlin*, 66 Ill. 13. II. The certified copy of the deed from Dunbar to Prout was improperly admitted in evidence. No proper foundation was laid for it. The deed was not properly acknowledged, and was not entitled to record. *Carpenter* v. *Dexter*, 8 Wall. 513; *Semple* v. *Miles*, 2 Scammon, 315; *Choteau* v. *Jones*, 11 Illinois, 300, 320; *Buckmaster* v. *Job*, 15 Ill. 328. And the clerk's certificate to the copy, not being authorized by law, was no evidence. III. The copies of the depositions were improperly admitted. No proof was offered showing that the witnesses were dead, nor any reason or excuse given why the witnesses could not be produced, or why their depositions had not been retaken. In the absence of such preliminary proof, it was incompetent to prove what the depositions contained. *Cook* v. *Stout*, 47 Illinois, 530, 532; *Aulger* v. *Smith*, 34 Illinois, 530; *Stout* v. *Cook*, 57 Illinois, 386; *Hutchins* v. *Corgan*, 59 Illinois, 70. IV. The testimony as to the taxes was improperly admitted. Tax receipts are subject to contradiction and explanation. *Elston* v. *Kennicott*, 52 Ill. 272. V. The evidence as to the deed from Dunbar to Prout did not entitle it to be admitted in evidence. Proof of the handwriting of the subscribing witness should have been accompanied by proof of the identity of the grantor. Phillips on Evidence, 490 to 505; 1 Greenleaf on Evidence, § 575; 1 Wharton on Evidence, § 701; *Wiley* v. *Bean*, 1 Gilman, 302; *Mariner* v. *Saunders*, 5 Gilman, 113. VI. The deed was not admissible as an ancient deed. *Jackson* v. *Blanshan*, 3 Johns. 292; *Smith* v. *Rankin*, 20 Ill. 14. No accompanying possession was shown. *Clarke* v. *Courtney*, 5 Peters, 319, 344; *Fell* v. *Young*, 63 Ill. 106. The certificate of the recorder to the copy of the record did not prove the deed and indorsement, or the fact that they were ancient. *Smith* v. *Rankin* (*sup.*); *Younge* v. *Guilbeau*, 3 Wall. 636; see also *Whitman* v. *Heneberry*, 73 Ill. 109. VII. The deed having been improperly acknowledged, the certified copy was incompetent to prove a recording. *Smith* v. *Rankin*, 20 Ill. 14. Frank's deed and Prout's deed bear the same date, and are to be presumed in law, in the absence of rebutting evidence, to have been made and delivered on the same

day. *Deininger* v. *McConnell*, 41 Ill. 227, 232; *Harden* v. *Osborne*, 60 Ill. 93; *Jayne* v. *Gregg*, 42 Ill. 413. The defendant below being in possession, and the Prout deed not having been properly recorded, the burden was on the plaintiffs below to show the priority of the Prout deed. The Frank deed has priority of record. VIII. The Prout deed lacked the indispensable certificate of magistracy. Hence its record was defective, and no constructive notice.

*Mr. Thomas Dent* for the defendants.

Mr. Justice Woods delivered the opinion of the court.

This was an action of ejectment, originally brought by William B. Morris, in the Circuit Court of the United States for the Northern District of Illinois, against Howard Stebbins, the plaintiff in error, for the recovery of a quarter section of land, originally situated in Madison County, Illinois, but when the suit was begun, situate in Stark County. Before the final trial of the cause, to wit, on January 22d, 1879, the death of the plaintiff was suggested, and the devisees named in the last will were made parties, as appears by the following entry upon the record of the court:

"Now come the parties by their attorneys, and Thomas Dent, Esq., the attorney of the plaintiff, suggests to the court the death of William B. Morris, and that Maria L. Duncan, Harriet B. Cooledge, and Helen Cooledge are the devisees of said deceased; and on the motion of the plaintiff's attorney, it is ordered by the court that said devisees, Maria L. Duncan, Harriet B. Cooledge, and Helen Cooledge, be made plaintiffs herein."

The defendant pleaded the general issue. The cause was tried by a jury, who returned a verdict for the plaintiffs, upon which judgment was rendered in their favor for the lands in controversy. To reverse that judgment, the defendant in the circuit court has brought the case here upon writ of error.

A bill of exceptions was taken upon the trial, from which the following statement of the case is made:

Disregarding the order in which the testimony was intro-

duced, and arranging it chronologically, the plaintiffs below, to prove title in themselves, offered the following evidence:

1. An exemplification of a patent from the United States to one John J. Dunbar for the lands in controversy.

2. A certified copy of a deed for the same lands from John J. Dunbar to William Prout, dated January 6th, 1818, said copy being certified to have been made February 3d, 1875.

3. A certified copy of a deed for the same lands from William Prout to Joseph Duncan, dated May 2d, 1834, and recorded in said county, October 29th, 1838.

4. Certified copy of a decree in chancery in the United States Circuit Court for the District of Illinois, dated June 9th, 1846, rendered in a cause wherein the United States were complainants, and the widow and heirs of Joseph Duncan defendants, and of the proceedings under said decree by which the premises in controversy in this suit were sold to the United States.

5. Certified copy of the deed to the United States under said decree for the same premises, made by William Thomas, commissioner, dated August 12th, 1846, and recorded January 17th, 1848.

6. Certified copy of a deed for the same premises, dated December 28th, 1847, and recorded June 5th, 1848, to William W. Corcoran, executed by R. H. Gillett, solicitor of the treasury, in behalf of the United States.

7. Certified copy of a deed for the same premises, dated December 20th, 1867, and recorded March 12th, 1868, from William W. Corcoran to William B. Morris.

8. Certified copy of the will of William B. Morris, and of the probate thereof, from which it appeared that Maria L. Duncan, Harriet B. Cooledge, and Helen L. Cooledge, the plaintiffs, were his residuary legatees.

To sustain the title, which the plaintiffs contended that they derived through these documents, they offered other evidence, which will be noticed hereafter, but they offered no evidence of the death of William B. Morris, the original plaintiff, since the certified copy of his will and of the probate thereof and the letters testamentary issued thereon.

The defendant, Stebbins, to show title in his lessor, offered in evidence the following title papers:

1. An exemplification of a patent by the United States to John J. Dunbar, dated January 6th, 1818, for the lands in controversy.

2. A certified copy from the recorder's office in Stark County, Illinois, in which county the land is situate, of a deed dated January 6th, 1818, from John J. Dunbar to John Frank, conveying said land in fee, and recorded in said county June 18th, 1870.

3. Other title deeds, by which the title passed from the heirs of John Frank to Benson S. Scott.

4. The stipulations of plaintiffs that Stebbins, the defendant, was in possession of the land in controversy at the commencement of the suit under said Benson S. Scott as his tenant only, and at no time under any other claim.

No exceptions were taken by the plaintiffs to the introduction of these title papers by the defendant.

The real contest in the case was between the title of the plaintiffs deduced through the deed of Dunbar to Prout, and their subsequent muniments of title put in evidence, and the title of defendant derived through the deed of Dunbar to Frank, and the subsequent conveyances put in evidence by him.

The defendant was in possession of the premises sued for. His evidence, which was not excepted to, gave him a *prima facie* title, and unless the plaintiffs showed a better title, they should not have recovered the lands in controversy. It is, therefore, only necessary to consider the title which the plaintiffs claim to have shown in themselves. The errors assigned all relate to the admission by the court below of the evidence offered by the plaintiffs to sustain their title, and the charge of the court to the jury upon the effect of that evidence. These assignments of error we shall now proceed to consider.

The court admitted as evidence tending to prove the death of William B. Morris, the original plaintiff, the duly certified copy of his will and of the probate thereof in the Probate Court of the County of Suffolk, in the State of Massachusetts,

and of the letters testamentary issued thereon, and the court charged the jury, in effect, that this evidence, uncontradicted, was sufficient to show the death of Morris. The admission of this evidence and the charge of the court thereon are assigned for error.

Whether the evidence objected to was or was not competent and sufficient to prove the death of Morris, it was clearly competent, the death of Morris being proved, to show title in the plaintiffs. The objection to its admissibility must, therefore, fall if there was other evidence to show *prima facie* the death of Morris. We think that the suggestion in the record of the death of Morris and the order of the court making his devisees parties was sufficient for this purpose.

Section 10 of chapter 1 of the Revised Statutes of Illinois, p. 94, Hurd, 1880, provides that,

" When there is but one plaintiff, petitioner, or complainant in an action, proceeding, or complaint in law or equity, and he shall die before final judgment or decree, such action, proceeding, or complaint shall not, on that account, abate if the cause of the action survive to the heir, devisee, executor, or administrator of such decedent, but any of such to whom the cause of action shall survive may, by suggesting such death upon the record, be substituted as plaintiff, petitioner, or complainant, and prosecute the same as in other cases."

The suggestion of the death of Morris, the sole plaintiff, was made in this case, as the record shows, by counsel for the devisees, both parties being present, and the court made the order, without objection, that the devisees be made plaintiffs in this case. We think that this suggestion, made without objection, and the order of the court thereon, settles *prima facie*, for the purposes of this case, the fact of the death of the original plaintiff. The statute provides upon whose suggestion of the death of a sole party plaintiff, the court shall make his heir or devisee, &c., plaintiff in his stead. It certainly cannot be the fair construction of the statute that a party may stand by and see the suggestion of the death of the opposing party entered of record and his heir or devisee substituted in his stead, and

upon final trial require further proof of the death, at least without some notice of his purpose to raise that particular issue. The death of the plaintiff, after the order of the court, may be considered as settled between the parties for that case, unless some motion is made or issue raised on the part of the defendant, by which the fact of the death is controverted. We have been referred to no decision of the Supreme Court of Illinois where a different rule has been announced. In the case of *Milliken* v. *Martin*, 66 Ill. 13, cited by counsel for defendant, the court merely decided that where a party plaintiff had died and his heirs were substituted in his place, they must prove that the person under whom they claimed was seized of the title and they were his heirs. But the report of the case clearly shows that the point now under consideration was neither decided nor touched. We think, therefore, that the ruling and charge of the court below did not prejudice the defendant.

The next assignment of error relates to the admission in evidence by the court of the certified copy of the deed from Dunbar to Prout and the testimony offered by the plaintiff to sustain such copy. The deed purported to be a conveyance, with covenants of general warranty, by Dunbar to Prout, of the land in controversy, for the consideration of $80. It recited that Dunbar was the patentee thereof, and set out the patent in full. The following is a copy of the *in testimonium* clause of the deed, of the signatures of the grantor and witnesses, the acknowledgment, affidavit of the grantor of his identity, his receipt for the purchase money, memorandum of registration, and certificate of the recorder of deeds for Madison County, Illinois:

"In witness of all the foregoing I have hereunto affixed my hand and seal, at Washington City, in the county of Washington and District of Columbia, this 6th day of January, one thousand eight hundred and eighteen.

"JOHN J. DUNBAR. [SEAL.]

"Signed, sealed, and delivered in the presence of—

"SAMUEL N. SMALLWOOD.

"JOSEPH CASSIN.

"DISTRICT OF COLUMBIA, *County of* ———, *ss.*

"Be it remembered that on this 6th day of January, 1818, the above-named John J. Dunbarr, who has signed, sealed, and delivered the above instrument of writing, personally came and appeared before us, the undersigned justices of the peace, and acknowledged, in due form of law, the same to be his free act and deed, for the purposes therein set forth, and also gave his consent that the same should be recorded whenever it might be deemed necessary. In witness of all which the said ——— has hereunto affixed his name and has undersigned the same.

"Acknowledged before—         "JOHN + J. DUNBARR.
"SAMUEL N. SMALLWOOD.              his mark.
"JOSEPH CASSIN.

"I, John J. Dunbarr, do declare upon oath that I am the same person intended and named in the above deed, dated the 6th day of January, 1818, and more particularly in the patent therein recited at length, and further, that I was duly placed in possession of the patent for the land conveyed in the above deed, by receiving the same from the General Land Office.

"JOHN + J. DUNBARR.
his mark.

"Sworn and subscribed to before me this 7th day of January, 1818.                                   "SAMUEL N. SMALLWOOD.

"Received, this 6th day of January, 1818, from William Prout, the sum of eighty dollars, being the consideration money expressed in the above deed.

"JOHN + J. DUNBARR.
his mark.

"Witness : JOSEPH CASSIN.
"Recorded June 23d, 1818.

"STATE OF ILLINOIS, *Madison County, ss.*

"I, John D. Heisel, clerk of the circuit court, and ex-officio recorder of deeds within and for Madison County, in the State of Illinois, do hereby certify the above and foregoing to be a true, perfect, and complete copy of an instrument of writing or deed of conveyance now appearing of record at my office in book E, pages 154, 155, and 156.

"In witness whereof I have hereunto set my hand and affixed the seal of our said court, at office in the city of Edwardsville,

this 3d day of February, A. D. one thousand eight hundred and seventy-five.

"[SEAL.]  "JOHN D. HEISEL, *Clerk.*"

The defendant below objected to the introduction of said certified copy in evidence, because the original deed was not so certified and proven as to make a certified copy from the record competent evidence under the laws of Illinois.

The court, without passing at that time upon the objection, and not then admitting said writing in evidence as a certified copy, permitted the plaintiffs, at their request, to make the follow proofs :

"And thereupon," as the bill of exception states, "the plaintiffs proved, to wit :

"1. By Mr. Dent, one of the plaintiff's counsel, that said counsel had had in their possession, prior to the great fire of October 8th and 9th, 1871, in Chicago, an original deed corresponding substantially in contents to the writing offered in evidence, except that there was not attached to it the official certificate, dated February 3d, 1875 ; that he had not compared said offered copy with said original, but he believed from recollection that it corresponded with the original, and that he had not made said alleged copy ; that said original deed had been sent to said counsel in behalf of Wm. B. Morris, the then plaintiff, for use in this suit, and had been offered in evidence on the first trial ; that said original deed had been burned up in the Chicago fire of October 8th and 9th, 1871 ; further, that said original deed had been sent to Washington and attached as an exhibit to the original depositions of E. J. Middleton and George Collard, hereinafter mentioned, and had subsequently been detached therefrom by leave of the court, and returned to Washington for use in taking the depositions of Henrietta Boone.

"2. The plaintiffs further offered to read in evidence a copy of the original depositions of E. J. Middleton and George Collard, taken *de bene esse* on September 21st, 1870, at Washington, D. C., to which the defendant below objected. It was admitted that the depositions had been correctly copied by an attorney in the cause from the original depositions on file in the case ; that the original depositions, with the other files and records of the

court, were burned up in the fire at Chicago of October, 1871; that no order of the court had ever been made authorizing the filing of said copy as a substitute for the original depositions, and that no proceedings under any statute had been had for the purpose of restoring said original, but that after said fire the plaintiffs' counsel had procured said copy from the counsel of defendant, and, with his consent, had placed it on file in this cause as a copy of the original depositions.

" The court thereupon overruled each of said objections to the reading of said copy of the depositions, and permitted the contents of said copy to be read in evidence, which was done; to which decision of the court the defendant then and there excepted.

" The contents of said copy so read were as follows:

" That said Middleton and Collard had carefully examined the signatures of Samuel N. Smallwood on said original deed purporting to be his, in three different places, and aver the said signatures to be the genuine handwriting of said Samuel N. Smallwood; and that said original deed is annexed to their depositions as Exhibit A; that they were personally acquainted with Samuel N. Smallwood in his lifetime, and knew his handwriting, having often seen him write, and they have no hesitation in declaring said signatures to be his genuine signatures."

The plaintiffs also offered in evidence the deposition of William W. Corcoran, who testified that in 1847 he purchased the lands in controversy from the United States at public sale and paid the purchase money for them into the treasury of the United States, and that at the time of the purchase he had no notice of any adverse claim.

The plaintiffs further read in evidence a certified copy of a commission from President Monroe, attested by Richard Rush, acting secretary of State, and the seal of the United States, dated April 30th, 1817, appointing Joseph Cassin justice of the peace in the county of Washington, in the District of Columbia, until the end of the next session of the United States Senate, and no longer; also a certified copy of a like commission, dated September 1st, 1817, appointing Samuel N. Smallwood a justice of the peace of said county until the end of said session, and no longer.

The plaintiffs also offered in evidence the deposition of Anthony Hyde, who testified that he was the business agent in Washington city of W. W. Corcoran; that he knew of the purchase of the land in question by said Corcoran in 1847, and of the payment by him of over $22,000 into the treasury of the United States for this and other lands; that from February, 1848, up to the time when his testimony was taken, February 24th, 1875, he had attended to all matters touching the tract of land in suit, such as the payment of taxes and the appointment of agents, up to the time of the conveyance thereof by Corcoran to Wm. B. Morris; that he sent the original deed from Dunbar to Prout, attached to the depositions of E. J. Middleton and George Collard, to the counsel of plaintiffs below in Chicago on October 11th, 1870; that said deed was afterwards returned to obtain a deposition of one Mrs. H. H. Boone as to Joseph Cassin's signature, and was afterwards forwarded, attached to a deposition of Mrs. Boone, to the clerk of the United States Circuit Court at Chicago on or about January 26th, 1871.

Hyde further testifies that he had paid the taxes on said lands for Mr. Corcoran from 1847 to 1864, mainly through agents who lived in Illinois, but that he himself had for a year or two paid the taxes directly to the county officers.

Assuming, for the present, that the evidence offered to support the deed from Dunbar to Prout was competent and properly admitted, the question is presented whether the deed itself, thus supported, was admissible. We are of opinion that it was.

The existence of the original deed and its destruction in the fire at Chicago, in October, 1871, was distinctly proved by the testimony of Dent, counsel for plaintiffs. He testified that it had been sent to the counsel in Chicago of the original plaintiff in the case; that it had been offered in evidence on the first trial of the case, and had been burned with the other papers and records of the court in the fire mentioned. It was therefore competent for the plaintiffs to prove its contents. Thus, in *Riggs* v. *Taylor*, 4 Wheat. 486, this court said:

" The general rule of evidence is, if a party intended to use a

deed or any other instrument in evidence, he ought to produce the original if he has it in his possession, or if the original is lost or destroyed, secondary evidence, which is the best the nature of the case allows, will in that case be admitted. The party, after proving any of these circumstances, to account for the absence of the originals, may read a counterpart, or if there is no counterpart, an examined copy, or if there should not be an examined copy, he may give parol evidence of its contents."

In the present case it does not appear that there was in existence any counterpart or examined copy of the destroyed deed. The only resource left to the plaintiffs was to prove the contents of the original by a witness who knew the contents. This was done by the deposition of Dent. He testified that the original deed corresponded substantially in contents to the certified copy offered in evidence, except there was not attached to it the official certificate of the court, dated February 3d, 1875. This evidence made the copy competent for the purposes of the trial.

Having thus established the fact of the original deed and its contents, the plaintiffs below were in the same position as if the original deed was in their possession and they had offered it in evidence. It remained for them to prove its execution.

It has been held by the Supreme Court of Illinois, that, under the act of February 19th, 1819, for establishing a recorder's office, and which was substantially the same as the act of 1807, which was in force when the deed from Dunbar to Prout was executed, a deed is valid as between the parties to it without being acknowledged. *Semple* v. *Miles,* 2 Scammon, 315. See, also *McConnell* v. *Reed,* Ib. 371.

Having established by proof the fact that the deed had existed and had been destroyed, and that the copy offered in evidence was a copy of the original, it only remained to prove the signing and sealing of the deed by the grantor.

As the witnesses to the deed were shown to be dead, the method pointed out by law to establish the execution of the deed was by proof of the handwriting of the witnesses to the deed. *Clarke* v. *Courtney,* 5 Pet. 319; *Cooke* v. *Woodrow,* 5

Cranch, 13. And when there was more than one witness, proof of the handwriting of one was sufficient. 1 Greenleaf on Evidence, sec. 575; *Adams* v. *Kerr*, 1 B. and P. 360; 3 Preston on Abstracts of Title, pp. 72, 73.

By the depositions of Middleton and Collard, which the court admitted in evidence, the handwriting of Samuel N. Smallwood, one of the subscribing witnesses of the deed, was fully proven. His signature also to the acknowledgment of the deed, as one of the justices of the peace before whom the acknowledgment was taken, and his signature to the jurat of an oath of identity indorsed on the deed, subscribed and sworn to before him by Dunbar, were proven by the same testimony. The genuineness of the handwriting of Smallwood as a witness to the deed was placed beyond all doubt by the depositions of these witnesses.

If, therefore, the evidence by which this proof was made was competent and admissible, the execution of the deed from Dunbar to Prout was established, and the deed itself was properly admitted in evidence.

We are next to consider the question whether the copies of the depositions of Middleton and Collard, by which the handwriting of Smallwood was proven, were properly admitted in evidence. This evidence was objected to by the defendant, and his objection was overruled, to which he excepted.

The admission of the parties, as appears by the bill of exceptions, showed the existence of the original depositions, that they had been destroyed with the other records of the court in the fire of October, 1871, that the copies were correct copies of the original depositions, and had been furnished by counsel for defendant, and with his consent had been placed on file in the cause as correct copies of the original. The objection made to the introduction of the copies was that the death of the witnesses was not shown, nor was it proven that they were incompetent to testify, and that their depositions could not be retaken; therefore proof of what they had testified in their depositions was not admissible.

The rule invoked to exclude copies of the depositions is, that in the absence of evidence that the witness who testified in a former trial is dead or incapable of testifying, or that his deposition can-

not be retaken, it is not competent to show what his testimony in the former trial was; and that when the deposition of a witness which was read upon a former trial is lost, its contents cannot be proved except after proof of the death of the witness whose testimony it contained. *Cook* v. *Stout*, 47 Ill. 530; *Aulger* v. *Smith*, 34 Ill. 530.

But if the witnesses had lived in another State and more than a hundred miles distant from the place of trial, proof of the contents of their deposition would have been admissible. *Burton* v. *Driggs*, 20 Wall. 125. Therefore, to have made the objection tenable, it should have also been put upon the ground that the witnesses were not shown to reside in another State and more than a hundred miles from the place of trial. This it did not do. When a party excepts to the admission of testimony he is bound to state his objection specifically, and in a proceeding for error he is confined to the objection so taken. *Burton* v. *Driggs, ubi supra*. The original depositions were taken in the city of Washington. It is therefore probable that the witnesses resided there. If the copy of the depositions had been objected to because it was not shown that the witnesses resided out of the district, and more than a hundred miles from the place where the court was held, the plaintiffs below might have supplied proof of that fact. The objection, as it was made, was not broad enough and specific enough, and was therefore properly overruled and the evidence admitted.

But we think the rule relied on by defendant to exclude copies of the deposition does not apply to the case in hand. The plaintiffs did not offer oral evidence of the contents of the depositions, but offered copies, which were admitted by counsel for defendant to be true copies. It was, therefore, not necessary to retake the depositions, or to prove the death of the witnesses or their incapacity to testify. The copy of the deposition was, by consent, substituted for the original, which was proven to have been destroyed, and being admitted to be a true copy, spoke for itself. It was, therefore, properly received in evidence.

It was further objected to the admission in evidence of the proof relating to the deed of John J. Dunbar to Prout, that as

the testimony to establish its execution was the proof of the handwriting of subscribing witnesses, it was necessary to prove the identity of the grantor in the deed: that is to say, that the John J. Dunbar by whom the deed purported to be executed was the same John J. Dunbar named in the patent for the lands in controversy.

In any case slight proof of identity is sufficient. *Nelson* v. *Whittall,* 1 B. & Ald. 19; *Warren* v. *Anderson,* 8 Scott, 384; 1 Selwyn's N. P. 538 n. (7), 18th ed. But the proof of identity in this case was ample. In tracing titles identity of names is *prima facie* evidence of identity of persons. *Brown* v. *Metz,* 33 Ill. 339; *Cates* v. *Loftus,* 3 A. K. Marsh, 202; *Gitt* v. *Watson,* 18 Mo. 274; *Balber* v. *Donaldson,* 2 Grant (Penn.), 459; *Bogue* v. *Bigelow,* 29 Vt. 179; *Chamblee* v. *Tarbox,* 27 Texas, 139. See also *Sewell* v. *Evans,* 4 Adol. & E. 626; *Roden* v. *Ryde,* ib. 629. There was no evidence that more than one John J. Dunbar lived at the date of the deed in Matthias County Virginia, which the deed recites was the residence of the grantor, nor in the District of Columbia, where the deed was executed, and there was no other proof to rebut the *prima facie* presumption raised by the identity of names in the patent and deed.

But, besides the identity of names there was other evidence showing the identity of persons. The patent and the deed bore date the same day, and the patent was recited *in hæc verba* in the deed. These circumstances tend strongly to show that the party by whom the deed was executed must have had possession of the patent. The deed recites that the patent was delivered to the grantor, John J. Dunbar, and the affidavit of John J. Dunbar, sworn to and subscribed on January 7th, 1818, before Smallwood, a justice of the peace, and one of the subscribing witnesses to the deed, whose signature to the jurat is shown to be genuine, to the effect that he was the same John J. Dunbar to whom the patent was issued, was indorsed upon the deed.

After a lapse of sixty-one years, this evidence is not only admissible to prove the identity of the grantee in the patent with the grantor in the deed, but uncontradicted is conclusive.

We are, therefore, of opinion that the deed from John J.

Dunbar to William Prout, which formed a link in the title of the plaintiffs, was sufficiently proven and was properly admitted in evidence by the circuit court. ' The other muniments of title put in evidence by the plaintiffs ·were admitted without objection, and established *prima facie* their title to the lands in controversy.

But it will be remembered that the defendant below had also shown a *prima facie* title to the lands in question ; that both parties traced title through the patent of the United States issued to Dunbar ·and through deeds apparently executed ' by him on the same day, to wit, January 6th, 1818, one to William· Prout, under which the plaintiffs claimed, and the other to John Frank, under which the defendant claimed.

The question, therefore, still remains, which is the. superior title ? According to the jurisprudence of Illinois, this must be settled by the fact, which of the two deeds apparently executed by Dunbar. was first recorded.

Section 15 of the act approved January 31st, 1827, Purple's Real Estate Statutes, 480, provided as follows:

" All grants, bargains, sales, &c., of or concerning any lands, whether executed within or without the State, shall be recorded in the recorder's office in the county where such lands are lying and being; within twelve months after the execution of such writings, and every such writing that shall, at any time after the publication hereof, remain more than twelve months after the making of such writing, and shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent *bona fide* purchaser or mortgagee for valuable consideration, unless such deed, conveyance, or other writing be recorded as aforesaid before the proving and recording of the deed, mortgage, or other writing under which any subsequent purchaser or mortgagee shall claim."

This act remains. substantially in force. Hurd's Revised Statutes, page 271, sec. 30.

By an act approved July 21st, 1837, Purple's Real Estate. Statutes, 496, 497, it was provided that the recording of· any deed . . . whether executed within or without the State,

by the recorder of the county in which the lands intended to be effected are situated, shall be deemed and taken to be notice to subsequent purchasers and creditors from the date of such recording, whether said writing shall have been acknowledged or proven in conformity with the laws of the State or not, and that the provisions of the act shall apply as well to writings heretofore as those hereafter admitted to record. This law is still in force. See Hurd's Revised Statutes, 1880, page 271, sec. 31.

It was held by the Supreme Court of Illinois, in *Reed* v. *Kemp*, 16 Ill. 445, that an instrument affecting or relating to real estate may be recorded though not proven or acknowledged, and the record will operate as constructive notice to subsequent purchasers and creditors. See also *Choteau* v. *Jones*, 11 Ill. 300; *Martin* v. *Dryden*, 1 Gil. 213.

And in *Cabeen* v. *Breckenridge*, 48 Ill. 91, the court declared that, "as a general rule, when the same person has executed two deeds for the same land, the first deed recorded will hold the title."

The evidence shows that the deed of Dunbar to Frank, under which the defendant claimed title, was not recorded until June 18th, 1870. The plaintiffs contended that the deed from Dunbar to Prout, under which they claimed, was recorded on June 23d, 1818, and it was shown that the deed from Prout to Duncan was recorded October 29th, 1838, and the deed of Gillett to Corcoran, June 5th, 1848, and the deed of Corcoran to Morris, March 12th, 1868.

If, therefore, the contention of the plaintiffs that the deed of Dunbar to Prout was recorded June 23d, 1818, is sustained by competent proof, their title must prevail.

But it is insisted for defendant that there was no competent proof of the registration of the deed of Dunbar to Prout. The proof relied on was the testimony of Dent, that the certified copy from the records of the county of Madison was a copy of the original deed; the certificate of the recorder that the certified copy was a copy of a deed which appeared of record in his office; and the certified copy of a memorandum at the foot of a record of the deed as follows, "Recorded June 23d, 1818."

. Conceding that the certified copy of the deed from the records of Madison County would not be proof of the contents of the original deed, because such original deed had not been so acknowledged and certified as to make a certified copy competent evidence, yet the fact that such a record of the deed existed was, by the law of Illinois, as we have seen, notice to subsequent purchasers. A certified copy from the record was therefore proof that such a deed and memorandum was of record in the proper office.

. For it is a settled rule of evidence that every document of a public nature which there would be an inconvenience in removing, and which the party has a right to inspect, may be proved by a duly authenticated copy. *Saxton* v. *Nimms*, 14 Mass. 320; *Thayer* v. *Stearns*, 1 Pick. 109; *Dunning* v. *Roome*, 6 Wend. 651; *Dudley* v. *Grayson*, 6 Monroe, 259; *Bishop* v. *Cone*, 3 N. H. 513; 1 Greenleaf on Evidence, § 484.

. The memorandum at the foot of the record was the usual record evidence, competent and conclusive, that the deed had been recorded at the date mentioned.

It was evidence of the date of the registration of the deed, because it was the duty of the recorder, by the nature of his office and without special statutory direction, to note when the record was made. 1 Greenleaf on Evidence, sec. 483.

But we think it may be fairly inferred from section 10 of the act of September 17th, 1807, which was in force when it is claimed that the deed from Dunbar to Prout was recorded, that it was the duty of the recorder to note the time when deeds left with him for record were recorded. He was specifically required to note the date when the deed was received, and was liable to a penalty of three hundred dollars for recording any deed in writing "before another first brought into his office to be recorded." Adam & Durham's Real Estate Statutes, vol. 1, page 63. The making of a memorandum of the date of the record was, therefore, an official act, which naturally fell within the line of his statutory duties, and a certified copy of it would be competent evidence to prove the memorandum and the date of the registration of the deed.

. We are of opinion, therefore, that the fact that the deed of

Dunbar to Prout was recorded on June 23d, 1818, was proved by competent evidence, and that it therefore follows that the title of the plaintiffs was better and superior to that of defendants, who claimed under a deed for the same lands not recorded until June 18th, 1870, more than fifty years after its date, and long after innocent purchasers had bought the lands and paid a valuable consideration for them.

The plaintiff in error contends that the act of 1837, *supra,* cannot apply in this case, because at its date the lands in question were no longer within the limits of Madison County, but in the county of Putnam. But the act expressly declares that it shall apply to writings theretofore as well as those thereafter admitted to record. The deed of Dunbar to Prout was recorded under the act of 1807, *supra,* which required it to be recorded in the county where the lands conveyed were situated. It was so recorded. No law of Illinois since passed has required any other registration of deeds by the parties thereto, or has changed the effect of the original registration. See act of February 27th, 1841.; Adams & Durham's Real Estate Statutes, vol. 1, pp. 93, 94.

The view we have taken of the case renders it unnecessary to notice certain questions of local practice argued by counsel.

We find no error in the record of the circuit court.

*Judgment affirmed.*