The Chief Justice
delivered the opinion of the Court:
This is an appeal from the Equity Court. The defendants are sued as trustees and executors under the will of William W. Corcoran, deceased. The bill alleges that on or about the 14th day of March, 1891, Mary Lee Willis, James T. Richardson, John Willis, William W. Scott, Nellie C. Willis, Lucy C. Morris, Ambrose M. Willis, Andrew J. Willis, being well seised and possessed as tenants in common of original lot 28, in square 172, in the city of Washington and District of Columbia, and having been so seised and possessed for many *532 years prior to February, 1886, did, on or about said month of March, '1891, by a deed dated March 14, 1891, unite in conveying said described property to complainants in fee simple as tenants in common — that is to say, one undivided three-fourths part of said lot to complainant, William W. Scott, his heirs and assigns, in and upon the trust, among others, to sell the said land and divide the proceeds among the grantors of said deed, according to their respective interests as by reference to said deed duly recorded in Liber 1597, folio 106 et seq., of the land records of said District will more fully appear, and the remaining one undivided fourth part of said land to complainant, Leo Simmons, his heirs, and assigns, in his own right, and complainants are now seised and possessed of said land under and by virtue of said deed; that a deed dated March 5, 1890, from the Commissioners of the District of Columbia, to Arthur T. Brice of said lot, as purchaser at a tax sale on October 6, 1887, for taxes and penalties for the year ending June 30, 1887, amounting to $8.81, the purchase money being $9.81, was executed, and thereafter Brice, by deed, executed to the defendants as trustees under the will of William W. Corcoran, deceased, and dated the 5th day of March, 1890, recorded in Liber 1476, at folio 26 of the land records of the District of Columbia, undertook to convey said lot to the defendants in fee simple.
Then follows a number of allegations in regard to the insufficiency and illegality of this deed by reason of the noncompliance of the officers of the District of Columbia in the proceedings to. sell the lot for taxes, with the law, as before alleged.
• The allegation of the bill is further that the deed to Brice is wholly void, but that inasmuch as the statute of 1877 provides that such a deed shall be prima facie evidence of title, its existence and the record thereof is a cloud upon the title of the complainants, which they pray may be removed.
The answer, in substance, denies that the complainants are the owners in fee of the premises. It denies that the *533 tax deed executed to Brice was illegal and void for the reasons set out in the bill, and also denies the facts upon which such reasons are predicated, except that they admit that the 'money with which said property was purchased at said tax sale was furnished by Corcoran, and not by Brice.
It appears in the evidence offered by complainant, that one Dr. John Willis, in 1802, received a deed for this lot from the original Government superintendent of Government buildings, who was authorized by law to make sale and conveyance of the lots belonging to the Government in the city of Washington, and that this deed was placed upon record. No actual possession of the lot was taken at any time until after the execution of the tax deed in 1890 by the tax collector to Brice. The complainants, after the receipt of the deed, which is recited in the bill, from the alleged heirs of Willis, caused to be erected a fence around this lot. That was about five months before the commencement of this action.
It appears further in the evidence that a sale of this lot was made for taxes in 1840; that the taxes had run from the year 1824 to 1835, and a deed was made after a tax sale to one Joshua Pierce; that in 1843 Joshua Pierce conveyed the lot to W. W. Corcoran, who, since that time, by himself and his trustees since his death, has paid the taxes upon this lot. It is claimed that the deed of 1840 from Pierce was defective and insufficient, owing to the failure on the part of the officers of the District of Columbia to comply with the terms of the statute existing at that time. It is further said that this deed cannot avail the defendants in this action for the reason that the statute at that time, and up until 1877, did not make the deed prima facie evidence of title; but on the contrary, the presumption was that it did not convey title unless it was shown that the requirements of the statute were complied with, the burden being upon the party holding the tax title to show that every step required by the statute had been complied with in the proceeding for the sale of the property for taxes.
*534 It is further said by the complainants that no attempt has been made on the part of the defendants to show that all the steps required by the statute existing in 1840 had been complied with, or to show that the tax deed vested any title, in fact in Corcoran.
It is further said, in that same connection, that by an act of Congress of 1877, deed of the tax collector is made prima facie evidence of title, and for that reason it became necessary for the complainants to file this bill in order that they might have an opportunity of showing that, in fact, the deed was illegal, taking that burden ¡upon themselves for the purpose of removing the cloud upon the title. In other words, the tax deed upon the record prior to the act of 1887 was not a cloud upon the title, because, in fact, it was a defective deed, under defective proceedings, and the parties would never be able to prove that it conveyed any title, and because the presumption of law was not that it did convey title. But after the passage of the act of 1887, the reverse was true, and the deed was presumptive evidence of title, and necessarily the existence of the deed upon the record was a cloud upon the title.
It is objected upon the part of the defendants 'that the plaintiffs have not properly connected themselves by the evidence with Dr. John Willis, who is shown to have received this title in 1802.
The evidence is that Dr. Willis, according to an inscription upon his tombstone at Montpelier, in Orange County, Virginia, was bom in Gloucester, Virginia, about 1770, and died in Orange County, Virginia, in 1811. His will is introduced in evidence by which it is shown that he owned quite a large property in Virginia, which was disposed of by that will, consisting of lands, houses, slaves and other-property, and that he also -possessed property in the city of Washington, which was ¡also disposed of by his will. It is further in evidence that in 1850 his heirs filed a bill in partition here to divide quite a number of lots; but the lot in question, however, was not included in this partition proceeding.
*535 I may say that if Dr. Willis died in 1811, it is patent that his actions, except as they have been left upon record, or are evidenced by some writing, could hardly be within the knowledge of any living witness. Eighty-one years have elapsed since his death, and all persons old enough to have known anything of him or his whereabouts, may be presumed to be dead, and whether he resided in Washington and owned property here, how he dealt with it, and what property he owned, would not be within the knowledge and memory of living witnesses, and necessarily to a considerable extent the identity of Dr. John Willis, who received the deed for the lot in question, with other property, in 1802, and the proof of his being the same Dr. John Willis, who was the ancestor of these complainants, must rest largely in reputation, and depend on what is ordinarily called hearsay evidence, but under the rules of law is admissible as being the best evidence, under the circumstances, which can be procured.
A number of papers were introduced in evidence which were found among the papers belonging to Dr. John Willis, who is the ancestor of the complainants. The first was ,a tax receipt for the payment of taxes on real and personal property in the city of Washington in 1803, signed by Washington Boyd, Treasurer of Washington City. The next was another receipt dated May 29, -1804, to Dr. John Willis for $6.50, for taxes on slaves, five men and three women, due to the corporation of Washington, for the year .1803, signed by Washington Boyd, Treasurer of Washington City. There were also introduced in evidence several other tax bills to Dr. John Willis for various years, signed by Washington Boyd, City Treasurer. Another is a receipt dated 1804, for letter postage, due to Edward Eno, postmaster at Washington, and signed by him. There were also introduced in evidence bills from the Washington Dancing Assembly, bakers’ bills, etc., all of which would tend to establish the fact that the Dr. John- Willis by whom these bills were paid was a resident of Washington for some years, and that, too, after 1802.
*536 Such seqms to have been the reputation or tradition in the family, although none of the living members of the family, of course, are old enough to know the fact. They only received their information from their parents, who were the children of Dr. John Willis, who died in Orange County, Va.
There are two incidents that are present in this case with regard to the identity of Dr. John Willis, which are quite significant. Not only is the name John Willis identical with the name found to be the grantee in the deed executed in 1802, but the profession indicated by the prefix “ Dr.” is the same.
Again, it is not shown that any other Dr. John Willis than the ancestor of these complainants lived or resided at that time in Washington, or owned any property in Washington, which could have been done, probably had such been the fact.
As to the proper method of proving the identity of persons who have long since been dead, we refer to the case of Stebbins vs. Duncan, 108 U. S., 32. In that case, Mr. Justice Woods says:-
“It is further objected to. the admission in evidence of the proof relating to the deed of John J. Dunbar to Prout, that as the testimony to establish its execution was the proof of the handwriting of subscribing witnesses it was necessary to prove the 'identity of the grantor in the deed, that is to say, that the John J. Dunbar by whom the deed purported to be executed was the same John J. Dunbar named in the patent for the lands in controversy. In any case slight proof of identity is sufficient. Nelson vs. Whittall, 1 B. and Ald., 19; Warren vs. Anderson, 8 Scott, 384; 1 Selwyn, N. P., 538, n. 7, 18 Ed. But the proof of identity in this case was ample. In tracing titles identity of names is prima facie evidence of identity of persons. Brown vs. Metz, 33 Ill., 339; Catas vs. Loftus, 3 A. K. Marshall, 202; Gitt vs. Watson, 18 Mo., 274; Balbec vs. Donaldson, 2 Grant (Pa.), 459; Bogue vs. Bigelow, 29 Vt., 179; Chamblee vs. Tarbox, *537 27 Tex., 139. See also Sewell vs. Evans, 4 Adol. and El., N. S., 626; Roden vs. Ryde, Id. 629. There was no. evidence that more than one John J. Dunbar lived at the date of the deed in Matthews County, Virginia, which the deed recites was the residence of the grantor, nor in the District of Columbia, where the deed was executed, and there was no other proof to rebut the prima facie presumption raised by the identity of names in the patent and deed.”
So that inasmuch as the defendants in the case at bar have offered no proof whatever going to show that there was any other Dr. John Willis living in the District of Columbia, or elsewhere, who might have been the owner of this property, the plaintiffs might well stand upon the prima facie proof of title resulting from the identity of the name. But there is more than that. It is reasonably shown that the ancestor of the complainants, Dr. John Willis, paid taxes on real estate here in the city of Washington for a number of years before his death, and that he must have resided here from his taking receipts in such matters as necessarily would be taken by a resident of the city, and not a nom-resident.
It is further shown in the evidence that Dr. Willis, according to reputation, was a man of considerable wealth and standing. He was the brother-in-law of James Madison, President of the United States, and according to all the evidence and .the surrounding circumstances, must have resided in*the city for a considerable time prior to his death.
It is true that there was a partition suit by these heirs in 1850 with reference to other real estate belonging to Dr. John Willis, and that this lot was not included. We think the presumption is that by some mistake it was omitted. The fact that it was included in the original deed to Dr. Willis, and that there is no record of its ever having been disposed .of by him or his heirs since that time, or by his legal representatives, raises the presumption that by some omission, it being an unenclosed lot, it was left out of the partition proceedings at that time. The reason for that omission is quite apparent, from the fact that it was not at *538 that time upon the record of the city of Washington in the name of Dr. Willis. It had been sold for taxes in 1840, and placed upon the records in the name of Mr. Corcoran, who •after that time paid the taxes. That, perhaps, sufficiently shows the reason why an error was committed by the heirs, and why they did not include this> lot in the partition proceedings.
We think, then, that the complainants, prima facie, have shown that they are in possession, not only claiming the legal title, but that they have the legal title to the property. It is very clear that the tax deed executed to Brice in 1890 is defective and that the proceedings were defective from beginning to end; that hardly one thing was done which was necessary to be done under the provisions of the statute, and the deed .is therefore wholly illegal and void.
The defendants have never had possession of this lot. They never enclosed it. The character of their title has not been such as would draw the possession to it, or connect the possession with the defendants or the person whom they represent, sa that it is not a case, on the part of defendants, that brings them within the purview of the decision in Sharon vs. Tucker, 144 United States, 533.
It is insisted upon the part of the defendants that the doctrine of laches should apply, and that the complainants are not in time in seeking their relief. The truth is that the complainants’ title was never threatened until the placing upon the record of the deed of 1890. There was never any cloud upon their title. The placing of the tax deed of 1840 upon the record did not even amount to a cloud upon the title because the statute at that time did not make the deed prima facie evidence of title.
The complainants, within a year after the placing of the deed of 1890 upon the record, filed their bill to remove the cloud from their title, and we think are in time.
It is claimed by counsel for the defendants that the placing of the deed of 1840, to Pierce, on the record, and the subsequent deed from Pierce to Corcoran, created such a *539 title by deed in Corcoran, as would draw the possession to Corcoran. We think not, and we have already stated the reasons why it -is not so. It was a void deed, and there was no actual possession taken, as was done in the case of Sharon vs. Tucker, supra.
For all these reasons, we think the plaintiffs are entitled to their decree to .quiet title, and that the deeds upon the record of 1890 to Brice, and the subsequent deed from Brice to the trustees of Corcoran should be set aside and the title of the complainants be confirmed.
Of course the only thing necessary for us to pass upon, and the only thing that will be embraced in the decree is the tax deed of 1890. As to the deed executed in 1840 to Pierce, it is not necessary that anything be mentioned in the decree, because it is not embraced in the bill, and the complainants do not ask to have anything done in relation to it. It is only mentioned in this opinion, because it was referred to in argument by counsel for the defendants to show that the defendants have title to this property presumptively by reason thereof and the record of the same.
Of course the only thing which binds the Corcoran estate so far as the decree is concerned, in this case, is the matter in relation to the tax deed of 1890, which the complainants in their bill, say is a cloud upon their title, and which they ask to have removed, and which we think they'are entitled to have removed, because they have shown that the tax deed is void and that they have a prima fade legal title.