## HARRY W. CLARK *vs*. FRANK P. STETSON.

### Androscoggin.   Opinion April 3, 1915.

*Contract.   False Representation.   Inherent Power of Courts to Preserve and Pro-
tect their own Records and to Substitute Copies of Lost Records.   Money had
and received.   Opportunity to see the Condition of Land and Personal
Property.   Purchase Price.   Rescission.   Sale of Farm.*

In an action for money had and received to recover the sum of fifteen hundred dollars, paid on account of the purchase price of a farm and certain personal property, before this court on defendant's motion for a new trial, it is

*Held:*

1.   That a valid contract was made between the parties, the terms of which were clearly understood by both, and if the plaintiff's verdict is based upon the contention of the absence of a contract between the parties, it is manifestly wrong.

2.   That there is no sufficient evidence of false representations on the part of the defendant to justify the verdict.   The plaintiff evidently failed to carry out the terms of the purchase, not because of any legal fault on the part of the defendant, but because he had either changed his mind or was unable to secure the balance of the purchase price.

3.   That had such actionable deceit been proved, rescission was not made within a reasonable time.

4.   It is within the power of the Justice presiding at the trial at nisi prius to permit a copy of a deposition to be substituted for the original in making up the case for the Law Court, the original having been introduced at the trial, but having been subsequently lost or mislaid, and the substantial accuracy of the copy being conceded.

On motion for new trial by defendant.   Motion sustained.

This is an action of assumpsit for money had and received to recover fifteen hundred dollars, paid to defendant by plaintiff as a part of the purchase price of defendant's farm and certain personal property.

Plea, the general issue. The jury rendered a verdict for the plaintiff for $1105.42, and the defendant filed a general motion for a new trial.

The case is stated in the opinion.

*White & Carter*, for plaintiff.

*Newell & Skelton*, for defendant.

SITTING: SAVAGE, C. J., CORNISH, HALEY, HANSON, PHILBROOK, JJ.

CORNISH, J.   This is an action for money had and received brought to recover the sum of fifteen hundred dollars, paid on account of the purchase price of a farm and certain personal property. The plaintiff obtained a verdict in the sum of $1105.42 and the case comes to the Law Court on the defendant's general motion.

The plaintiff sets up two grounds on either of which he bases his right of recovery, first that the minds of the parties never met and agreed upon the purchase price so that no contract was made between them; and second, if a contract was made, it was voidable because of the false representations of the defendant and was seasonably rescinded by the plaintiff. On neither ground was there sufficient evidence to sustain the verdict.

1. *No contract.*   It appears, without contradiction, that the plaintiff was a locomotive engineer, a resident of Lewiston, and was desirous of purchasing a farm in the suburbs of that city. Through a friend his attention was called to the farm of the defendant, and in the month of February, 1913, he called upon the defendant and proposed a purchase, but the defendant had not then made up his mind to sell and no trade was made. The defendant was then, and still is, an invalid and confined to the house, and it was on that account that he had been thinking of selling but had not reached a definite conclusion. Two weeks later the plaintiff called again, and between that time and April 22 made several more visits to the farm, during one of which the defendant named $5000 as his price. In response to the question as to what the defendant asked for the farm, the plaintiff testified, "Five thousand dollars, that was his price." Nothing more was said about price between the. parties. It was accepted on both sides as fixed. On April 22, the plaintiff went again to the defendant and the trade was consummated on that basis. The plaintiff says: "I told him I came up to trade for the farm and

to give him my money." He paid the $1500 on account and took a receipt for the $1500, "in part payment the farm." "I told them I would pay the purchase price the 15th of May, between the first and the 15th of May" says the plaintiff. What purchase price? Five thousand dollars, because the plaintiff neither claims nor intimates in his testimony that he was purchasing on any other basis, and on cross examination he squarely states that the price of the farm was $5000, and he knew that was the price when he paid in the $1500. Two days later, on April 24, the defendant moved off from the farm and the plaintiff moved on. On May 15, the plaintiff met the defendant's wife, and a Mr. Pike who was to furnish $2500, at Judge Newell's office, and the time for completing the contract was extended thirty days. The receipt for $1500, that had been given the plaintiff on April 22, bears the indorsement "30 days from 15th of May." The balance never was paid and the plaintiff moved off the premises on July 7. There is absolutely nothing in the plaintiff's own testimony, regardless of that of the defendant and his wife, to substantiate the claim that the purchase price was not clearly agreed upon. There is also substantial agreement between the parties as to what was embraced in the sale. The plaintiff says "Everything on the farm except the household furniture and a few hens, six or eight hens, that they wanted to keep, and a light team they had there to ride with, driving team," and the defendant says: "farm, stock and tools." It is true that the question subsequently arose whether the plaintiff obtained all the personal property that he had bought; but that in no way affects the certainty of the contract itself. It is also true that there is evidence of certain statements made by the defendant's wife to the plaintiff's wife as to reducing the price. But these are denied by Mrs. Stetson and, even if true, the plaintiff does not claim to have known or acted upon them.

If the verdict is based upon the contention of absence of contract between the parties it is clearly wrong.

2. Admitting the contract, a verdict based upon false representations and legal rescission is equally wrong.

The contract was made between the parties themselves, the seller and the purchaser. The representation as to the soil, according to the plaintiff's testimony was this: "I asked him if the farm was rocky and he said, 'only what you see.' He said 'all the rocks on the farm was what you could see.'" It appears that the farm was

situated on a high hill, that ledge cropped out in many places and the plaintiff had a full and fair opportunity to see its condition on the many visits that he had made to it before the purchase. The fields were in plain view from the house. After the purchase the plaintiff had a small piece plowed and found many rocks, but one of his own witnesses, a practical farmer, testified that the soil was good and the fields fertile and under a good state of cultivation. The learned counsel for the plaintiff in argument urges other alleged representations, as to quantity of hay cut, the existence of plum trees and strawberry patch, condition of farming tools, etc. The evidence as to the hay is too indefinite to be of importance, the plaintiff admits that plum trees and strawberry patch were not mentioned, and the condition of the tools the plaintiff could determine for himself, for he had full opportunity to inspect them and did inspect them prior to the purchase.

Clearly all these claims are afterthoughts. The plaintiff does not pretend that he was led to make this purchase by reason of any such representations, nor that he gave it up because he found them to be untrue. The apparent fact is that either he grew tired of his bargain for other reasons, or he was unable to raise the balance of the purchase price. In none of the interviews that took place between the parties after the trade was made did the plaintiff charge the defendant with making false representations. At the interview on May 15th, the date for consummating the trade, the plaintiff says "I told them I shouldn't carry it out, and didn't want to have anything further to do with it," giving no reasons whatever for his change of attitude, and he says Mrs. Stetson then told him at that time that if he threw up the trade he would lose his $1500. The defense claims that the plaintiff said the party from whom he expected to obtain the $1,000 which with the $2500 to be furnished by Mr. Pike would make up the balance of the $3500 had declined to let him have it and therefore he was not prepared to complete the bargain that day. There is force in this because it is conceded that an extension of thirty days was given the plaintiff and he went back and continued to occupy and carry on the farm, until July 7, when he finally left, and when he surrendered the keys on July 8, he did so with the words "I am all done with your farm." It is unnecessary to go into this branch of the case with greater detail. It is clear that the plaintiff broke the contract and not the defendant,

and that even on his own testimony he had no valid reason for doing so on the ground of actionable deceit in the sale, the essential elements in which have been recently restated by this court in *Hotchkiss* v. *Coal & Iron Co.*, 108 Maine, 34.

Moreover the defendant urges that had there been such actionable deceit, and plaintiff had attempted to rescind therefor, the rescission was not made within a reasonable time. This point is well taken. The plaintiff was in occupation from April 24 until July 7, and all the facts of which his counsel now complain must have been ascertained by him long before he decided not to carry out his contract. Even after the interview of May 15, he continued to occupy the premises for a further period of nearly two months. While courts stand ready to protect the legal rights of a party against the wrongs of another, they cannot permit contracts to be abrogated merely because they are not advantageous or the expected means for carrying them out are not forthcoming. Men must be bound by their bargains legally and honestly made, and while a jury is apt from sympathy to favor the party who has made financial loss, a verdict resting on such flimsy grounds as in this case should not be allowed to stand.

3. A point of practice, raised by the plaintiff, should be noticed.

At the trial, the deposition of the defendant was introduced in evidence and read to the jury, but was subsequently lost or mislaid by the clerk, and the defendant's counsel asked leave to substitute a carbon copy thereof in making up the case for the Law Court. To this the plaintiff objected. The Justice who had presided at the trial term granted the motion, the right being reserved to the plaintiff to raise any question as to procedure before the Law Court.

We think the ruling was correct. The substantial accuracy of the copy is conceded. The carbon copy is accompanied by the affidavit of the stenographer who took the deposition to the effect that it is a true and complete carbon copy as transcribed from her notes, that before the original was delivered by her to the court a single unimportant change was made in it by agreement of counsel, and that no other change was made in the original to the best of her knowledge and belief. The plaintiff relies upon the *Stenographer cases,* 100 Maine, 271, where the court held that when by reason of the death of an official Court Stenographer, a party who has filed a motion for a new trial is unable to procure any report of the evidence, the Law Court must

overrule the motion for want of prosecution. The ground of the decision was that the right of a hearing upon motion in the Law Court is purely statutory, and that the statutory right is conditional upon furnishing the Law Court with a report of the evidence. No report, no hearing. That is quite different from the case at bar where the single question is whether in sending the case forward to the Law Court the presiding Justice has the right to permit what he is satisfied is a copy of an original paper to be used by the printer instead of the original, the original having been lost. It would be a gross miscarriage of justice if this could not be done.

At common law courts have the inherent power to preserve and protect their own records and to substitute copies of lost records. "Every Court of record has power over its own records and proceedings to make them conform to its own sense of justice and truth, so long as they remain incomplete and until final judgment has been entered." *Lothrop* v. *Page*, 26 Maine, 119. It has accordingly been held that the contents of a complaint and warrant in a criminal case, lost after being returned into court, may be proved by secondary evidence. *Commonwealth* v. *Roark*, 8 Cush., 210, and that a copy of a lost indictment may be substituted for the original. *State* v. *Ireland*, 109 Maine, 158. The same rule applies to lost depositions. *Auluger* v. *Smith*, 34 Ill., 534; *Gage* v. *Eddy*, 167 Ill., 102, 47 N. E., 200; *Burton* v. *Driggs*, 20 Wall., 125; *Stebbins* v. *Duncan*, 108 U. S., 32.

If such copies can be introduced in evidence at the trial, with even greater reason should they be allowed in making up a record for the Law Court, when the original was actually used in the trial below. "Cases in which there are motions for new trials" reach the Law Court "upon evidence reported by the Justice." R. S., Chap. 79, Sec. 46, and Chap. 84, Sec. 53. It is judicial history that before the day of stenographers the presiding Justice made up the report from a comparison of his own minutes with those of the counsel in the case. In case of disagreements between the counsel as to any particular evidence the Justice decided what the report should contain. It was all within his control, and the evidence was received by the Law Court "as reported by the Presiding Justice," to use the words of the original act. Public Laws of 1852, Chap. 246, Sec. 8. That power still inheres in the Justice. And when, as here, an original document has been lost, it is clearly within his power to permit a copy

thereof to be substituted, to the end that justice and truth may prevail and at the same time the legal rights of all parties be carefully preserved.

The testimony of the defendant is properly before us, and upon the general motion the entry must be,

*Motion sustained.*
*Verdict set aside.*