66    13
45a  235

66    13
158  523

## LUTHER S. MILLIKEN

*v.*

## WILLIAM B. MARLIN *et al.*

1. EJECTMENT—*new party plaintiff after verdict.* Where the original plaintiff in ejectment died before trial, and the declaration was amended making his heirs plaintiffs, and after verdict in favor of the plaintiffs, the court allowed another heir to be made a co-plaintiff, and rendered judgment in favor of the new plaintiff and the other plaintiffs: *Held,* that the

court erred in allowing the new plaintiff to be joined, and in rendering judgment on the verdict in his favor.

2. SAME—*heirs may be made parties on death of plaintiff.* In ejectment, where the land descends to the heirs, on the death of the plaintiff after verdict and before judgment, no doubt, under our statute, the heirs may revive in their own names, and have judgment on the verdict in favor of their ancestor.

3. LIMITATION—*color of title—good faith.* The law is settled in this State that the holder of color of title will not be presumed to know of a defect in a prior deed in the chain of title, so as to charge him with bad faith. Hence such holder will not be affected by the fact that the judgment under which the sale was made, through which he claims, was void.

4. SAME—*proof of payment of taxes by parol.* It is the settled rule of law, that the payment of taxes may be proved by parol testimony in ejectment, where the defense relied on is the limitation under the act of 1839, by payment of taxes for seven successive years upon vacant land under color of title.

5. INSTRUCTION—*may be based upon slight evidence.* If there is evidence tending to prove a fact, an instruction based upon the same will not be erroneous, although such evidence may be slight.

6. ALTERATION—*question of fact.* Where an instrument offered in evidence has the appearance of having been altered, as when a portion of it is in a different ink and handwriting from the body of it, the law raises no presumption as to when the change was made, or by whom, but these are questions of fact to be found by the jury.

7. SAME—*evidence bearing on question.* In such a case the jury, in determining the question, will look at the instrument itself for an explanation, as well as to all the circumstances in evidence; and if an alteration is apparent, it is for the jury to determine whether it was made before or after its execution, and with or without the consent of the maker.

8. SAME—*materiality of, a question of law.* Whether an alteration of an instrument is material, is a question of law for the court, and should not be submitted to the jury.

9. LIMITATION ACT OF 1839—*presumption as to good faith.* Where a party having color of title to vacant land pays taxes on the same for the statutory period under the act of 1839, and then goes into possession, the law will presume good faith, and it is for the party resisting the bar of the statute to show bad faith.

10. SAME—*how avoided by party under disability.* Under the limitation law of 1839, there are two states of fact under which a minor, *feme covert, lunatic,* etc., may avoid the bar, after the disability ceases. Where the land is occupied it may be avoided by bringing suit within three years after

the disability ceases, and prosecuting it to judgment; but where the land is vacant and unoccupied, the refunding of all taxes with twelve per cent interest per annum, is required within three years after the termination of the disability.

11. SAME—*may be avoided during disability.* Where the saving clause of a statute authorizes persons under certain disabilities to avoid the bar of a statute of limitations within three years after the disability ceases, no reason is perceived why they may not do the same thing during the continuance of such disability through those who can legally act for them.

12. EVIDENCE—*instruction as to weight of.* In a case where the testimony was conflicting, the court instructed the jury that where there was a conflict of evidence, the greater weight should be given to the statements of those whose opportunities had been the best for gaining accurate information concerning the things about which they testified: *Held,* that the instruction was erroneous, as it ignored all other considerations affecting the credibility of the witnesses.

APPEAL from the Circuit Court of Peoria county; the Hon. S. D. PUTERBAUGH, Judge, presiding.

This was an action of ejectment, brought in the circuit court of Stark county, for the recovery of the sw. qr. of sec. 32, T. 13, N., R. 7, E., and taken by change of venue to the circuit court of Peoria county.

On the trial of the cause the circuit court, among others, gave the following instruction referred to in the opinion of the court, numbered 22:

"The jury are further instructed that it is not the number of witnesses that creates the preponderance of proof, but it is the amount of truth, pertinent to the issues in the case, developed by the testimony of witnesses, that creates such preponderance; that where there is a conflict of evidence, the greater weight is to be given to the statements of those whose opportunities have been the best for gaining accurate information concerning the things about which they testify."

Mr. H. W. WELLS, and Mr. M. SHALLENBERGER, for the appellant.

Mr. D. McCULLOCH, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, brought in the circuit court of Stark county, for the recovery of a quarter section of land. The declaration contained two counts, the first in the name of John Brandon, and the second in the name of Augustus Marlin as his conservator. The plea of not guilty was filed. The venue of the case was changed to the Peoria circuit court. Some years after the suit had been commenced Brandon died, and his heirs were made plaintiffs.

On the trial in the court below, plaintiffs read in evidence a copy of a patent from the United States government to Brandon for the land in controversy, and made proof of heirship of plaintiffs, and that defendant was in possession of the premises.

Appellant then offered and read a tax deed for the premises, conveying the land to Wm. S. Moss, dated the 14th day of May, 1844. Also read in evidence a power of attorney from Moss to Whitaker, and a sale of the land under this power to appellant, dated on the 11th of December, 1854. He also introduced a power of attorney from Brandon, the patentee, to Wm. B. Reeves, dated March 17th, 1857, authorizing him to sell the land, and a certified copy of a deed under the power to Wm. Reed. He then introduced parol testimony of payment of taxes from 1842 to 1854 by Moss, whilst he held the tax title, and while the land was vacant and unoccupied, and that appellant took possession of the land soon after the year 1854, and had continued in possession to the time of the trial.

Appellees then, in rebuttal, introduced evidence to show that Brandon had been insane from 1833 till the time of his death, and appellant introduced evidence to prove his sanity during that period. On the trial by the court and a jury a verdict was found against the defendant, whereupon he entered a motion for a new trial. Plaintiffs then asked and obtained

leave to make James V. Guthrie, one of the heirs of Brandon, a party plaintiff, and the motion for a new trial was overruled and judgment rendered in favor of James V. Guthrie with the other plaintiffs, and defendant appeals to this court.

The allowance of appellees' motion to make an additional plaintiff after the jury had returned a verdict, is urged as error in the court below. The practice seems to be novel, after a trial has been had and the issues found by a jury, to permit a person claiming in his own right, to become a plaintiff. That executors, administrators, etc., may, on the death of a plaintiff, and before judgment is entered, become or be substituted plaintiffs, is perhaps true; but in such cases they appear and are substituted in their representative character. And in an ejectment suit, where the land descends to the heirs, on the death of a plaintiff after verdict and before judgment rendered, no doubt, under our statute, the heirs might revive in their own names, prevent the suit from abating, and have judgment. But in such case they represent the title of the deceased in the land, as the executor or administrator does the deceased in personal actions.

When Brandon died, the heirs had themselves substituted parties plaintiff, and prosecuted in their own right, and thus became the real plaintiffs in the suit, and to recover they had to show that the person under whom they claimed was seized of the title, and that they were his heirs. There was no verdict standing in favor of Brandon at the time of his death. If there had been, then any and all of his heirs could have been made plaintiffs on an order of the court, and had judgment in their favor, and no one would question its regularity, because there would have been a trial between the ancestor and the defendant. Or if after verdict and before judgment any one of the substituted plaintiffs had died, then his heirs could no doubt have been substituted in the place of the deceased plaintiff, because they represented and succeeded to the rights of a plaintiff who had litigated his rights with the defendant, and obtained a verdict.

2—66TH ILL.

In this case, however, James V. Guthrie represented no one who had litigated the right which he claims, with the defendant. He claims as an heir of Brandon, but never was a party to the suit, and appellant has not been called upon to defend himself against the title James V. Guthrie now claims to a portion of the land in controversy. If the jury had returned a verdict in favor of some person not a party to the record either as plaintiff or defendant, and found that he owned the premises in fee, and he had come forward and asked to be made a party to the action, and the court had admitted him, and rendered judgment on the verdict in his favor, would any one contend that such was regular and proper practice? It seems to us such a practice would be unprecedented, and could not be sustained. And yet in such a case there would be a verdict finding that he was the owner, but the insuperable objection would be that he was not a party to the record when the trial was had, nor would he represent any one who was.

In this case, however, the jury have not found that James V. Guthrie had any title of any kind as against appellant or any one else. He was not a party to the record, nor has the jury, on his assertion of title against appellant, found any thing. His rights have not been litigated or found by a court or a jury. Nor has appellant been afforded any opportunity or means to defend himself against James V. Guthrie's claim to ownership in the land. Here stands a judgment in favor of a person who was not a party to the record, was not a plaintiff in any suit, so far as this record shows, nor did he, so far as we can see, even claim to be an owner of any interest in the property, yet he has recovered a judgment, and an execution is awarded to put him in possession. This, we think, was error.

Appellees should have, before the trial, made him a party plaintiff, or amended their declaration so as to have recovered any interest or portion in the land claimed by them independent of the claim of James V. Guthrie. Either of

these courses was open to appellees. Had they made him a party plaintiff before the trial, then the case would have fallen within the rule announced in some of the cases referred to in the brief for appellees. Or had he been the son of one of the plaintiffs in the suit, and a trial had resulted in a verdict, and the parent had died before judgment, the case would have fallen within some of the other cases to which reference is made.

It is urged that the judgment for taxes was void, and hence there could not have been good faith in defendant in acquiring the color of title, and for that reason the judgment should not be reversed even if the defense in other respects showed a compliance with the statute so as to form a bar to the action. As early as the case of *Woodward* v. *Blanchard*, 16 Ill. 424, it was held that the holder of color of title was not affected by the fact that the judgment under which the sale was made was void. That case has been followed by a large number of decisions, and if any rule of property can be considered as settled in this State, it is, that the law will not presume the holder of the color knew of a defect in a prior deed in the chain of title to charge him with bad faith. We have no inclination to review the large number of cases announcing the rule.

It is also urged that it was error to permit appellant to prove the payment of taxes by any other evidence than the tax receipts themselves. In the case of *Hinchman* v. *Whetstone*, 23 Ill. 185, it was held that payment of taxes in this character of defense might be made by oral testimony. That decision has been followed by a number of others, and we regard the rule as settled, and decline to review the grounds of the decision. This, like many other rules, we regard as the settled law of this jurisdiction.

It is objected that the tenth and eleventh of appellees' instructions should not have been given, as there was no evidence upon which to base them. Although the evidence may have been slight, still we think it warranted the court in

giving them. As to the eleventh instruction, it was claimed that the power of attorney which was in evidence showed that the description of the land was in a different ink and handwriting from that in the body of the instrument, and showed an alteration. If this was true, then it was a fact to be found by the jury, and authorized such an instruction, properly limited. It has been held that on the production of such an instrument, apparently altered, the law raises no presumption as to when the change was made, or by whom, but these questions must be determined by the jury. *Reed* v. *Kemp*, 16 Ill. 445, and the authorities there cited. And the jury, in determining the question, will look to the instrument itself for an explanation, as well as to all of the circumstances in evidence. If there was an apparent alteration in the power of attorney, it was for the jury to determine whether the alteration was made before or after its execution, and with or without the consent of the maker. This instruction incorrectly leaves it to the jury to find whether the alteration was material. That was a question of law, but as no other alteration was claimed, this one, if made, was material, and the jury could not have been misled by the instructions given.

The seventeenth of appellees' instructions has, so far as we have been able to find, no evidence upon which to base it. The party holding the color of title having paid the taxes and gone into possession, the law presumes good faith, and it is for the party resisting the bar of the statute to show bad faith. In the record we find no evidence of bad faith, and the giving of the instruction may, and probably did, induce the jury to believe the judgment claimed to be void, or something else, was evidence of bad faith. This instruction should not have been given.

The twenty-first of appellees' instructions is not erroneous. It asserts that if Brandon was insane from the date of the sheriff's deed, relied on as color, until within three years of bringing the suit, the deed and acts relied upon to bar

the action are void. Whilst it would have been more accu-
rate to have said they were voidable, still that did not mislead
the jury. The objection raised is, that this instruction was
not limited as the court was asked to do by appellant's third
refused instruction, by requiring them to find that Brandon
owned the land, that appellees were his heirs, and that they
had repaid all taxes paid by Moss on the land whilst vacant
and unoccupied, with twelve per cent interest, within three
years after the death of Brandon.

The provision of law relied upon as an objection to this in-
struction is the saving clause of the third section of the act
of 1839, which, after saving the rights of *femes. covert*, minors,
insane persons, etc., declares that such persons shall commence
an action to recover the land within three years after such
disabilities shall be removed, and shall prosecute such suit to
judgment, or in case the land is vacant and unoccupied shall,
within the time specified for bringing suit, pay to the person
or persons who have paid the same, all the taxes, with interest
thereon at the rate of twelve per cent per annum, that were
paid on such vacant land.

There are two states of facts under which the minor, *feme
covert*, or lunatic, etc., may avoid the bar of the statute after
the disability ceases. One is, where the land is occupied, by
bringing suit within three years, and prosecuting it to judg-
ment. The other is, when the land is vacant and unoccupied,
by refunding all taxes, with twelve per cent interest per annum,
within three years after the cessation of the disability. The
cases arising under the first and second sections of the act are
intended to be embraced in the saving clause, and the first
part of that clause evidently was designed to apply to lands
that were occupied; and the last clause embraces vacant
and unoccupied land. That the last clause does not apply
to occupied land, is manifest from the fact that it is put
in the disjunctive. Had it been intended that both a suit
should be brought for lands in adverse possession, and all
taxes repaid, to entitle plaintiff to a recovery, the statute would

certainly have so declared, but the only condition imposed is, that the suit shall be brought within the limited period, and shall be prosecuted to judgment. And if a person within the saving clause may perform the acts within three years after the disability ceases, no reason is perceived why he may not, by those who can legally act for him, during its continuance. In fact it would operate unjustly to hold that such a person could not sue and recover his property until after the disability terminated. It would, in many cases, operate as a deprivation of the party owning the property of its use and enjoyment during his life. This suit was, therefore, properly brought and prosecuted without repaying the taxes.

The twenty-second of appellees' instructions is wrong in regard to the rule for determining the weight of evidence. It is not true, either as a proposition of law or fact, that a witness having the better opportunity of knowing the facts is entitled to the greater credit. Where both are equally intelligent, equally truthful, fair and unprejudiced, the proposition may be true. But a person may have every means of being fully and accurately informed, and yet, for many reasons, might be utterly unworthy of belief. And in a case of conflict of evidence, as there is here, the influence such an instruction may have had in finding the verdict must have been great. Here was a conflict of evidence, and to say the least, owing to the interest of a large number of witnesses in the event of the suit, and from the character of the evidence before the jury, the right of appellees to recover is not free from doubt, and this and all other instructions should have been accurate.

Inasmuch as the case will be passed upon by another jury, we shall not determine whether the evidence supports the verdict. The judgment is reversed and the cause remanded.

*Judgment reversed.*