(No. 11869.—Reversed and remanded.)

NELLIE A. BECHTEL, Exrx., Defendant in Error, *vs.*
GEORGE A. MARSHALL, Plaintiff in Error.

*Opinion filed April 17, 1918—Rehearing denied June 5, 1918.*

1. BILLS AND NOTES—*when court should not direct verdict for plaintiff.* In an action on a promissory note, if there is any competent evidence in the record tending to establish a defense to part of the amount sued for, the court is not justified in directing the jury to return a verdict for the plaintiff in disregard of such evidence.

2. SAME—*when books of corporation are admissible in suit on note.* Books of a corporation in which an agent of the payee in a promissory note made entries in settling up the affairs of the corporation, which settlement was the consideration for the note, are, when properly identified, admissible in a suit on the note by the executrix of the payee to show that the figures of the agent were wrong, but under section 2 of the Evidence act defendant is incompetent to identify the books.

3. SAME—*partial failure of consideration is defense to suit on note.* The defendant in an action on a promissory note may set up as a defense a partial failure of consideration without seeking redress in an independent action.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. DAVID F. MATCHETT, Judge, presiding.

HELMER, MOULTON, WHITMAN & WHITMAN, and CHARLES R. HOLTON, for plaintiff in error.

CULVER, ANDREWS, KING & STITT, for defendant in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This is an action in assumpsit on a promissory note given by plaintiff in error, dated February 1, 1908, payable one day after date to the order of H. H. Bechtel, for

$16,125.65, with six per cent interest. Plaintiff in error pleaded the general issue, that the note was practically without consideration, or that there was a partial failure of consideration. At the close of the evidence in the trial court counsel for defendant in error moved for a directed verdict, which motion was granted by the court, and the jury were instructed "to find the issues for the plaintiff and assess the plaintiff's damages at the sum of $24,207.24." This amount included the principal of the note, with interest from its date. After judgment was entered on the verdict the case was taken to the Appellate Court, and the judgment of the trial court was affirmed. The case is now here on petition for *certiorari*.

It appears from the record and briefs that said note was given in partial or full settlement with the stockholders of the old Lake Tanning Company of Illinois. This old Lake Tanning Company was organized in 1898, with Henry H. Bechtel, George A. Marshall and Thomas E. Mooney as owners of all the stock, apparently, as we understand the record, each of the three owning a third. Mooney and Bechtel resided in Cincinnati and gave no close personal attention to the business, which was located in Chicago, while Marshall resided in that city and apparently had entire charge of the business while the company was a going concern. From its organization until it was closed up, with the exception of one year, the company sustained losses, and in 1908 it was closed out and a part, if not all, of its business attempted to be turned over to the new Lake Tanning Company of Ohio. This new company was organized in 1907 and was licensed to do business in this State the same year. All three of the owners of the stock in the old company were stockholders in the new company, Mooney and Bechtel apparently being quite heavy stockholders while Marshall was simply a nominal stockholder for the purpose of being elected one of the directors. Bechtel was also one of the directors of the new concern. During the time that

both these companies were doing business there was another corporation, called the American Oak Leather Company, organized in Ohio and having a branch office in Chicago, which did considerable business with the old Lake Tanning Company. Mooney and Bechtel were stockholders, and a part of the time previous to this settlement, and possibly after the settling up of the affairs of the old Lake Tanning Company, were officers of the American Oak Leather Company. Bechtel and Mooney were quite frequently in Chicago in connection with the business affairs of these corporations in which they were interested. Charles A. Gordon, whose home was apparently in Cincinnati, was Mooney's private secretary and gave all of his time to looking after Mooney's interests. Gordon testified that he kept private books for Mooney as to his various transactions with these three concerns, and spent, as we understand, quite a portion of his time in Chicago, having his office in the same building occupied by the Chicago branch of the American Oak Leather Company.

There is quite a dispute in the briefs as to how the affairs of the old Lake Tanning Company were closed out the early part of 1908, the final transactions being on May 1 of that year. The note here in question, as we understand Gordon's testimony in his deposition, was given by plaintiff in error, Marshall, to Bechtel, and another note of larger amount was given to Mooney by Marshall to settle up the account, it being agreed at the time of the settlement that Marshall was in debt to the old Lake Tanning Company, and that Mooney and Bechtel, if these notes were given them to settle the interests of Marshall, would assume all the obligations and debts owing by the old Lake Tanning Company. There is a sharp dispute between counsel for Bechtel and Marshall as to whom Gordon represented in this settlement. It is clear, however, and both parties concede, that he represented Mooney and that Marshall personally represented himself. At the time of this settlement,

and for some time after this litigation was instituted, Bechtel was living, and he testified briefly on one or two points before his death, and was present at the time Gordon's deposition was taken and also when certain other testimony was taken on behalf of plaintiff in error. We think it is clear from Bechtel's testimony and from the testimony of Gordon that Bechtel was not present at this settlement and that Gordon was acting as the private secretary and special employee of Mooney. We think there can be no question from the evidence in the record that Gordon also acted as the agent of Bechtel in closing up the affairs of the old Lake Tanning Company of Illinois. It may be stated here that after Bechtel's death his wife, as executrix, was substituted to further prosecute the suit, and the judgment was entered in her favor as executrix. It may also be said that there was a sharp dispute between plaintiff in error and defendant in error as to whether the books of the old Lake Tanning Company were introduced on the hearing and offered in evidence. The Appellate Court held, and apparently the trial court also held, that these books had not been sufficiently identified to be introduced as the books of said company. We shall have occasion to refer to this question later.

On the hearing in the trial court plaintiff in error attempted to show that the note was without consideration or had partially failed in consideration, to the extent, at least, that plaintiff in error had received no credit for his salary, of which he had not been paid $4666.46, his annual salary being $4000. The books of the old Lake Tanning Company, as well as certain books and records of the new Lake Tanning Company and certain records of the American Oak Leather Company, were introduced during the hearing and the trial judge admitted them subject to objection, apparently stating that he might strike them out afterwards if he did not think proper connection had been made to admit of their being considered as introduced. Coun-

sel for plaintiff in error also introduced certain expert witnesses, whose testimony tended to show that if the books of the old Lake Tanning Company and the form of settlement (made and, as we understand counsel's claim, entered in said books by Gordon,) were the basis for the settlement, the accounting as figured out by Gordon was wrong in some respects, liabilities being charged to Marshall that should not have been charged to him. All of this testimony, and also the books in question, were received by the trial court on the hearing, the court saying, as we read the record, in each instance, that he would allow them to go in "for the present." At the conclusion of plaintiff in error's case counsel for defendant in error argued that such evidence was incompetent, and stated to the court that in the event he should allow the evidence to remain in, defendant in error asked to be permitted to introduce testimony in rebuttal tending to contradict that of plaintiff in error's accountants. So far as we can find from the record, counsel for defendant in error made no direct motion to strike out any of this evidence at the close of the hearing but did move that the court direct a verdict, and the court, without making any ruling of record at that time as to the competency of this evidence, and with the evidence apparently still in, gave an instruction directing the jury to find for the defendant in error, as heretofore stated.

It is argued very earnestly by counsel for plaintiff in error that the trial court erred in directing the verdict with this evidence still in the record. The court, in giving the instruction as to the verdict, probably considered that the evidence in question was not competent, but it was not stricken out, and with that evidence still in the record before the jury we do not think the court, under the decisions in this State, was authorized to direct a verdict for the plaintiff. This court has said that the fact that the court, upon weighing all the evidence, may be of the opinion that a verdict against the plaintiff would have to be set

aside if returned, does not justify the directing of a verdict for the plaintiff if there is any evidence tending to support the defendant's contentions with reference to the controverted questions of fact material to the right of recovery. (*Bailey* v. *Robison,* 233 Ill. 614.) In that case this court also held that the trial court was not justified in directing a verdict for the plaintiff in a suit on a note where there was some evidence fairly tending to establish the defendant's claim that he had made a part payment upon the note which had not been credited thereon. (See to the same effect as to when the trial court should direct a verdict, *Woodman* v. *Illinois Trust and Savings Bank,* 211 Ill. 578; *O'Leary* v. *Chicago City Railway Co.* 235 id. 187; *American Art Works* v. *Picture Frame Works,* 264 id. 610.) The court should have ruled on this motion as to striking out this evidence. We think certain of this testimony should have been admitted, and with any of this testimony in the record the trial court could not properly direct a verdict for the plaintiff. Necessarily, on the re-trial of this case, if the books of the Old Lake Tanning Company are not satisfactorily identified they should not be admitted in evidence. As already said, on this record it is somewhat difficult to tell whether they were clearly identified as the original books of entry of that company, but if they were, they were admissible for what they were worth to verify or contradict the settlement as figured by Gordon.

Conceding for the purposes of this case that the journal and ledger were not shown by undoubted evidence to be the original books of entry of the old Lake Tanning Company, yet there is merit in the argument of counsel for plaintiff in error (in view of the testimony of Bechtel before his death that the books of the old Lake Tanning Company were kept by or under the direction of Gordon, and of Gordon's testimony that he made the settlement between Mooney, Bechtel and Marshall, as heretofore stated, and that, as we understand the evidence, he made a memorandum of this

settlement and the figures relating thereto in the books in question, and in view of the fact that, as we have held, the evidence shows that Gordon was acting as the agent of Bechtel,) that the books in dispute were admissible for the purpose of corroborating or contradicting the figures of this settlement made by Gordon. Counsel for the defendant in error, it is true, argue in their brief that the books Bechtel testified to as being kept by Gordon were the books of the American Oak Leather Company, but a reading of the record, in our judgment, does not justify that conclusion. We think Bechtel's testimony, fairly construed, was as to Gordon's keeping the books of the old Lake Tanning Company, and Gordon himself testified that he did not know anything about the books of the American Oak Leather Company. Bechtel also testified that Gordon made the settlement for him and knew all about the books, and it was testified by witness Cobb that Bechtel admitted to him that he supposed Gordon's figures as to this settlement were correct as entered on these books. We realize that counsel for the defendant in error argue that this conclusion is not in accord with the record, but we have gone over the record on this point and are convinced from the testimony of Gordon, Cobb and Bechtel, which is not contradicted in any material respect on this point by any other testimony in the record, that Gordon acted as the representative of Bechtel in closing out the business of the old Lake Tanning Company and made the entries in question as to said settlement in the books here in dispute. This being so, we think the conclusion necessarily follows that this settlement as figured by Gordon and found in connection with the books was admissible to contradict the figures as made by Gordon. *People* v. *Lefens,* 269 Ill. 472; 17 Cyc. 399, and authorities in note; *Cumbey* v. *Lovett,* 76 Minn. 227.

In this connection it is argued that the trial court erred in refusing to allow plaintiff in error to testify and identify these books. At the time his testimony was offered Bechtel

was dead and his wife was suing as executrix. We think the trial court ruled correctly, under our statute on evidence, in refusing to permit plaintiff in error to testify as to these books. Certainly plaintiff in error was not competent under the general provisions of section 2 of the Evidence act. We do not think the testimony sought to be given by plaintiff in error would come under the third exception in said section, as no one on the opposite side testified directly to any conversation or transaction with the opposite party or parties in interest in such a way as to permit plaintiff in error to testify with reference to these books.

While the early doctrine was that the defendant in an action on a promissory note could not set up as a defense a partial failure of consideration but must seek redress in an independent action, that is not the rule in this State nor the present general rule. (3 R. C. L. 944, 945; *Schuchmann* v. *Knoebel,* 27 Ill. 175; *Hill* v. *Enders,* 19 id. 163.) No question appears to have been raised in the trial court by defendant in error as to the jurisdiction of that court to have a re-accounting on this trial, and until asserted at the instance of a party in interest the jurisdiction of courts of equity in actions involving accountings is not exclusive of the jurisdiction of courts of common law. (1 Story's Eq. Jur.—13th ed.—sec. 442.)

Counsel have argued other questions in their briefs, including the question as to whether said note was given as accommodation paper. That question is not seriously argued by counsel for plaintiff in error, and we do not find in the record any evidence justifying the conclusion that this note was accommodation paper. The other questions raised we do not deem of sufficient importance to require a detailed discussion.

While the question of the burden of proof was not passed upon in the trial court on the hearing it is argued at length in the briefs, but as it may not necessarily arise on another trial of this case we do not deem it necessary to

discuss it here.    See for a discussion of the subject under somewhat similar circumstances, 8 Corpus Juris, 994, 995, and authorities cited; 2 Ency. of Evidence, 485, 501, and cases cited.

The judgments of the Appellate and trial courts will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*