**Minot Silliman, Appellee, v. Milo R. Nowlan, Appellant.**

**Gen. No. 8,655.**

486

Opinion filed September 20, 1933.

BRIAN & McMANUS, for appellant; ROBERT J. HARTLEY, of counsel.

W. W. WRIGHT and GEORGE W. HUNT, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This is a suit in assumpsit, instituted by appellee to recover upon three promissory notes. The declaration alleges that each of said notes was payable to the order of Trumans' Pioneer Stud Farm, and was made and delivered by appellant to the payee on March 30, 1929; that said notes matured on September 1, 1929, September 1, 1930, and September 1, 1931, respectively, and each note bore interest at the rate of six per cent per annum from date until paid; that the payee, after the execution of said notes, but on the same day and year, indorsed each of said notes and delivered the same to appellee, who, prior to the maturity of any of the notes, indorsed and delivered them to the State Bank of Toulon. The declaration then alleges that each of said notes was a judgment note and that on November 18, 1929, the State Bank of Toulon obtained judgment thereon by confession against appellant for the sum of $136.44, which judgment was never paid by appellant, but was collected from appellee by reason of his liability as indorser. Attached to the declaration were copies of the notes and an affidavit of appellee stating that he had read the declaration, knew the contents thereof and that the matters and things therein contained are true and correct; that as indorsee of said notes, he paid to the State Bank of Toulon the sum of $133.20 to satisfy the judgment which the bank had obtained against ap-

pellant, and that by reason of said payment, appellant is indebted to appellee for said sum.

To this declaration appellant filed the general issue, duly verified by his affidavit and gave written notice that upon the trial of the cause he would offer in evidence and insist first: that the consideration for the notes upon which the judgment had been taken had failed, of which failure appellee had knowledge long prior to the time when he voluntarily paid the judgment to the bank. That said judgment had been opened up and the suit was pending for hearing in the circuit court of Stark county at the time appellee paid said judgment. Second, that said judgment was taken upon notes which were wholly without consideration and upon which nothing was due from appellant, of which appellee had knowledge long prior to the time appellee voluntarily paid said judgment. Third, that the judgment was taken upon notes, which were illegal and void, having been given for the purchase price of a Breeding Certificate issued by the Truman Pioneer Stud Farm; that the sale of said certificate was forbidden by the Illinois Security Act, inasmuch as it was a Class "D" security, and appellee was a party to the transaction, had complete knowledge of the contract with appellant, was present at the time of the transaction and his payment to the bank was a voluntary payment by him of a void judgment. Fourth, that each of the notes upon which judgment was taken had been materially altered without the knowledge or consent of appellant, by inserting the word "six" therein, thereby making each of them bear interest at the rate of six per cent, whereas at the time they were executed each note bore no interest. Fifth, that appellee knew that the horse to be furnished appellant was represented to be a low, wide out, blocky horse and a 50 per cent foal getter, but the horse tendered appellant was the opposite; that during all the negotiations and transactions which appellant had

relative to said notes, upon which judgment was taken, appellee knew all the facts alleged in this notice, was present and a party in interest, and entered into the deal wherein appellant signed the notes and profited in the transaction.

Issue being joined upon the verified plea of the general issue, the cause was submitted to a jury and at the close of the evidence, in obedience to a peremptory instruction, the jury returned a verdict in favor of the appellee and against the appellant for $148.31, upon which judgment was rendered and the record is brought to this court for review by appeal.

The evidence introduced on behalf of appellee, the plaintiff below, discloses that Trumans' Pioneer Stud Farm is a corporation, managed by J. G. Truman, and that T. J. Malloy was its representative; that Mr. Malloy had visited appellant on several occasions endeavoring to interest him in the purchase of a stallion; that appellee, accompanied by Mr. Malloy, were in appellee's car and appellant executed these notes in their presence. The notes were the regular printed form judgment notes used by the Truman Company and as printed bore interest at the rate of seven per cent per annum from date until paid, but Mr. Malloy testified that the night before appellant signed these notes he, Malloy, wrote the word "six" above the word "seven," which he had scratched out by drawing a pen line through it so that the note when executed bore six per cent interest, and was in the same condition as it appeared when offered in evidence at the trial.

J. G. Truman testified that he was secretary, treasurer and general manager of Trumans' Pioneer Stud Farm, and as such, indorsed the notes executed by appellant on April 15, 1929, and delivered them to appellee as part payment of a horse which he had purchased of appellee on February 25, 1929, for $500, but which was not delivered until a day or so after April 15, 1929, the arrangement being that appellee

was to accept notes of parties in his neighborhood to that amount, which Truman obtained from the sale of a stallion which was delivered to the parties the evening of April 15, 1929.

Appellee corroborated the evidence of Mr. Truman as to his receipt of the notes in part payment of a horse which he sold to the Truman Pioneer Stud Farm and further testified that after he retained the notes for a month or so, he indorsed and disposed of them to the State Bank of Toulon, receiving credit therefor upon his account at that bank; that on December 24, 1930, he paid the bank $133 in compliance with its request, inasmuch as he had indorsed them. He further testified that he knew the notes he received in payment for his horse were notes executed by the parties who had purchased shares in the stallion; that he himself had purchased a share and went with Mr. Malloy to appellant's home, at which time appellant asked him about the stallion and he told him he thought it was a good thing; that he also went with Mr. Malloy, who was the agent for the Trumans to other places and heard him dealing with them, "knew the dealings, knew his purpose and knew all about it."

It was stipulated that the State Bank of Toulon recovered a judgment by confession upon these notes on November 18, 1929, for the sum of $136.44. On November 23, 1929, this judgment was opened up and leave granted appellant to plead and pleas were filed, but the judgment was released of record on December 24, 1930, by the bank. The three notes were offered and over the objection of appellant admitted in evidence.

In his own behalf appellant testified that appellee and Mr. Malloy were sitting in appellee's car at the Carstairs' place between 9 and 10:30 a. m. the day the notes were executed, and that he, appellant, was standing beside the car with one foot on the running board when he signed these notes which represented

two shares in the stallion which was being purchased, and that both of them talked about the horse. His counsel then asked him to "tell the jury what conversation took place at that time between you and Mr. Malloy prior to your signing the notes, what did he say about the horse." This was objected to, but the objection was overruled and appellant answered that Malloy told him he was a lucky bird for having so many mares to breed to such an extraordinarily good horse. He said it was an imported stallion and international prize winner. He said it was a low down, blocky, wide wagon kind of horse and said he sold several shares in the horse. Appellant testified that he told Malloy that he would not sign the notes because he didn't want the notes scattered around the country; that he did all his business at one bank and didn't want the notes sold, to which Malloy replied that Mr. Truman never sold any of his notes—always held them. Appellant then said he wouldn't sign the notes until he, Malloy, gave him his word of honor the notes wouldn't be sold, and Malloy said they would not be sold. Appellee, according to appellant's testimony, said very little while there, but did say something about the horse, and asked if any others around there would be interested, and appellant gave him Roy Lindstrom's name. Appellant further testified that he signed the notes, but that when he signed them the word "seven" was scratched out and nothing written above it, and Malloy told him there was to be no interest upon them, but the next time he saw them was after they had been placed in judgment and at that time the word "six" had been written in. That the stallion that was delivered was a gray stallion, with a rough head, very leggy, long bodied and his rear quarters didn't conform to his front quarters.

Upon the motion of the appellee, all of this testimony following the question "What did he say about the horse?" was stricken from the record and excluded

from the consideration of the jury, and the offer of appellant to prove the same facts by four other witnesses was denied, and a verdict was returned in obedience to the court's peremptory instruction.

It was the contention of appellee in the trial court and is his contention here, that the evidence discloses him to be a bona fide holder of these notes for value in due course; that he had filed an affidavit of claim in pursuance of the statute, which was sufficient to require appellant to file an affidavit of merits, and while his verified plea did present a meritorious defense, it was not a sufficient affidavit of merits as would warrant the admission of the evidence which the court excluded and that the testimony excluded was inadmissible under the verified plea of the general issue.

Appellant contends that the affidavit filed by appellee with his declaration is not an affidavit of claim as required by the statute and therefore appellant was not required to file an affidavit of merits; that appellee, having joined issue upon the general issue, properly verified and gone to trial upon the issues raised thereby without an affidavit of merits as required by the statute, waived the filing of such an affidavit; that while it is true that his verified plea presented a meritorious defense, it was not an affidavit of merits as contemplated by the statute and was not so intended by appellant; that some of the evidence which the court excluded was admissible under the issues joined, and all of it was competent under the written notice of special defenses.

Section 55 of the Practice Act, Cahill's St. ch. 110, ¶ 55, provides that if the plaintiff in certain actions shall file with his declaration an affidavit showing the nature of his demand and the amount due him from the defendant, after allowing to the defendant all his just credits, deductions and set-offs, if any, he shall be entitled to judgment, as in case of default, unless

the defendant, or his agent or attorney shall file with his plea an affidavit stating that he verily believes the defendant has a good defense to said suit upon the merits to the whole or a portion of plaintiff's demand, and specifying the nature of such defense.

The only purpose subserved by the affidavit of the plaintiff is to entitle him to judgment, as in case of default, unless the defendant shall file an affidavit of merits with his pleas and whether the plaintiff shall file such an affidavit with his declaration is entirely optional with himself. If he does not do so or files an insufficient one, the only effect of such failure is that the defendant is then entitled to plead to the declaration without accompanying his plea with an affidavit of merits. *Kern v. Strasberger,* 71 Ill. 303.

The affidavit of appellee, accompanying the declaration in this case, is as follows, viz.:

"State of Illinois }
County of Stark } ss.

"MINOTT SILLIMAN, being first duly sworn on oath, states that he is the plaintiff in the above entitled cause, and the endorsee of the notes respectively described in the declaration; that he has read the foregoing declaration and knows the contents thereof, and that the matters and things therein contained are true and correct; that as endorsee of the notes described in said declaration he paid to the State Bank of Toulon, Illinois, the sum of One Hundred and thirty three & 20/100 Dollars ($133.20) to satisfy the judgment which the said State Bank of Toulon, Illinois had against Milo R. Nowlan, the maker of the notes described in said declaration; that by reason of said payment the said Milo R. Nowlan is indebted to this plaintiff in the sum aforesaid.

Minott Silliman.

"Subscribed and sworn to before me this 6 day of October, A. D. 1932.

(Official Seal)    D. K. Shearer, Clerk County Court.''

Under the statute it was necessary for the affidavit to state the nature of appellee's demand and the amount due him from appellant after allowing to the appellant all his just credits, deductions and set-offs. In the instant case the affidavit states that affiant was the plaintiff, the indorsee of the notes described in the declaration, and that the matters and things therein contained are true and correct; that as indorsee he paid the bank $133.20 to satisfy the judgment which the bank had against appellant, and concludes that by reason of said payment, appellant is indebted to him in this sum. The affidavit was insufficient to require appellant to file with his pleas an affidavit of merits, because it does not state the amount due after allowing to the defendant all his just credits, deductions and set-offs. Appellee insists, however, that even if his affidavit is not in full compliance with the statute, still the attention of the trial court was not called thereto, and no opportunity was given appellee to amend and therefore appellant waived his right to insist upon the insufficiency of his affidavit in this court and therefore can take no advantage thereof here, citing *McKenzie v. Penfield,* 87 Ill. 38. In the *McKenzie* case the phrase "all his just credits, deductions and set offs" was omitted from the affidavit of claim, but the affidavit of the plaintiff did state that the "defendants are truly and justly indebted to him, after allowing all claims and set-offs whatever, in the sum of $140.40, said indebtedness being in the nature of one promissory note, given October 20, 1874, and due May 15, 1875, with ten per cent interest." It appears in that case that the defendants had filed a plea of *non assumpsit,* but no affidavit of merits, and upon the motion of the plaintiff, the court entered a rule upon the defendants to file such an affidavit, but defendants declined and for a failure to comply with that rule and for want of an affidavit, their unverified plea of *non assumpsit* was stricken from the files, a

default entered and judgment rendered in favor of the plaintiff. The court, in affirming the judgment, said that the affidavit of claim was not a full and strict compliance with the statute, but the attention of the trial court was not called to such defects and that parties would not be permitted to raise in the Supreme Court, for the first time, questions which were not submitted to the circuit court where the subject matter is such that the defect might have been supplied by amendment, if specially challenged.

The instant case is clearly distinguishable from the *McKenzie* case. Here appellant did not purport to file any affidavit of merits as provided by the Practice Act, and no suggestion was made to the court by appellee before the trial that appellant should file one. In the instant case, appellee took issue on the plea of the general issue and went to trial upon the issues raised thereby and not having insisted before the trial upon appellant filing a statutory affidavit of merits indicates to us that he did not consider his affidavit which he filed with his declaration as one which would require appellant to file a statutory affidavit of merits.

Appellee insists, however, that the verified plea of *non assumpsit* filed by appellant was equivalent to a statutory affidavit of merits and presented a meritorious defense, citing *Fergus v. Cleveland Paper Co.*, 3 Ill. App. 629; *Kimbark v. Blundin*, 6 Ill. App. 539; *Bauer v. White*, 213 Ill. App. 159, and *Willard v. Bristol*, 251 Ill. App. 234. The *Fergus* case was a suit in assumpsit to recover against five persons as partners and the declaration was accompanied with an affidavit of claim as provided by the statute. Each defendant filed a plea of *non assumpsit* and a special plea verified by affidavit denying his joint liability. The trial court allowed a motion to strike these pleas from the files. The Appellate Court in holding this ruling erroneous called attention to the provisions of the statute and said "The language of the affidavits is manifestly

different from that employed by the statute, yet we think the facts stated are broader, and more than an equivalent to those required by the statute. The pleas denying joint liability, if true, are a defense to the entire suit, and the affidavits verifying the pleas, state in substance . . . that they have such defense to the entire suit. The statute does not require the nature of the defense to be set out in the affidavit. These sworn pleas, however, not only show the existence of a defense, but indicate its precise nature.'' In the *Kimbark* case, which was a suit upon an appeal bond, the defendant filed a plea of *non est factum* in proper form duly verified. In holding that the trial court erred in striking this plea from the files and entering a default for want of an affidavit of merits, the court said ''The plea of *non est factum* set up a good defense to the action upon the merits, and an affidavit of the truth of that plea was a sufficient affidavit of merits within the meaning of the statute providing for such affidavits. . . . The affidavit of the truth of the plea was a substantial compliance with the statute as to an affidavit of merits.'' In *Bauer v. White*, 213 Ill. App. 159, the court cited the *Fergus* and *Kimbark* cases, *supra*, and held that it was improper to enter a default without first striking the pleas from the files. *Willard v. Bristol*, 251 Ill. App. 234, was a suit in assumpsit brought by plaintiffs as indorsees and holders in due course of a note against Bristol and Smith as partners. With the declaration an affidavit of claim was filed and the defendants filed their pleas of the general issue, a special plea of payment and a special plea that Bristol was not a member of the partnership. Smith later filed an additional plea denying that he executed the note sued on. Replications were filed and a trial had which resulted in an instructed verdict for the plaintiff. The court in its opinion said that the pleadings of defendants presented no issue for trial, and the verification of the plea did not dispense with

the necessity of an affidavit of merits under section 55 of the Practice Act, Cahill's St. ch. 110, ¶ 55. It does not appear from a reading of the opinion in this case which plea, if any, was verified. In our opinion the exact question before us was not presented in any of these cases and the *Fergus* and *Kimbark* cases were decided prior to the time that the statute required the affidavit of merits to specify the nature of such defense. In *Truesdell v. Hunter,* 28 Ill. App. 292, which was an action in assumpsit to recover upon a note, the plaintiff filed with his declaration an affidavit of claim. The defendant filed the general issue sworn to and two special pleas, one of which was sworn to and which denied the execution of the note. At the conclusion of its opinion the court said the defendant had no right to file pleas without an affidavit of merits on his part. The affidavit attached to the general issue putting in issue the signature of the note was not such an affidavit of merits as the statute requires, and the court should have allowed appellant's motion to strike these pleas from the files. In *Original Typewriter Circular Co. v. Buehler,* 67 Ill. App. 575, which was a suit in assumpsit upon a note, the plaintiff filed an affidavit of claim as provided by the statute and the defendant a verified special plea without an affidavit of merits. The trial court struck the plea from the files because no affidavit of merits was filed, the plea only being sworn to, and rendered judgment for the plaintiff and this action was sustained by the Appellate Court and the judgment was affirmed.

In *Bannat v. Zulley,* 243 Ill. App. 497, which was an action in assumpsit to recover the amount due on a check, the plaintiff filed with his declaration an affidavit of claim. To this declaration defendant filed a plea which he designated as a plea to the jurisdiction, but which the Appellate Court held was a plea in bar. This plea was verified by an affidavit in which defendant stated that he knew the contents thereof and that

the same were true. Thereafter the court struck said affidavit and plea from the files on the ground that no affidavit of merits was filed by the defendant, and in affirming the action of the trial court, the court said, "Appellee having filed an affidavit of merits with his declaration, it was necessary that an affidavit of merits be filed with appellant's plea, and in default thereof, the court was warranted in striking the affidavit to the plea, which did not purport to be an affidavit of merits, and the plea, from the files."

In *Colfax Grain Co. v. Bradford,* 225 Ill. App. 419, it was held that at any time before the commencement of the trial, plaintiff had a right to have an insufficient affidavit of defense filed with the general issue stricken from the files.

Under the statute it is the duty of the defendant in his affidavit of merits to specify the nature of his defense and this means that he must set out the facts which constitute his defense. In the instant case the verification of the general issue cannot be held to be an affidavit of merits as provided by the statute and from the conduct of the parties prior to and at the trial, neither the affidavit accompanying the declaration or the affidavit verifying the plea of the general issue were treated as a statutory affidavit of claim or a statutory affidavit of merits. If appellee now desires to insist, however, that this was a statutory affidavit of merits, he must be held to have waived its insufficiency inasmuch as he joined in the issues tendered by appellant's plea of the general issue, offered evidence to establish his case as completely as though a sufficient affidavit of merits was on file, proved not only the execution of the notes, but offered evidence to the effect that there had been no alteration of the notes since their execution and that appellee was a bona fide holder thereof for value. Appellee must therefore be held to have waived any insufficiency of this affidavit because he treated it as sufficient until after he had

rested his case, and then for the first time insisted that the pleadings were in such condition as to preclude appellant from rebutting the evidence which he had produced to prove the issues as he conceived them to be under the pleadings.

Treating therefore the affidavit of claim as being sufficient to require appellant to file an affidavit of merits, and treating the verification of the plea of the general issue as such affidavit of merits as required by the statute, we are of the opinion that appellee by his conduct at and before the trial waived the right to insist that such affidavit of merits was insufficient so as to preclude appellant from offering and having admitted the testimony which the court excluded upon his motion. *Reddig v. Looney*, 208 Ill. App. 413. Where the plaintiff takes issue on the plea and goes to trial without any affidavit of merits, the filing of an affidavit is considered waived. *Chalkowski v. Szafranski*, 250 Ill. App. 359.

Section 123 of the Negotiable Instruments Act of this State, Cahill's St. ch. 98, ¶ 145, provides that where a negotiable instrument is materially altered by the holder without the assent of all the parties liable thereon, it is avoided except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor. The next section provides that any alteration which changes the sum payable, either for principal or interest or any change or addition which alters the effect of the instrument in any respect, is a material alteration, and it has been held that changing a note from one that is non-interest bearing to an interest bearing obligation is a material alteration, *Conkling v. Olmstead*, 63 Ill. App. 649, and it has been held that a note is materially altered when the interest

rate has been raised. *Brooks v. Laws,* 202 Ill. App. 448. The question of alteration is not raised under the general issue with written notice of special matters of defense, *Dewey v. Warriner,* 71 Ill. 198, nor will the burden of proving the execution of the notes sued on be cast upon the plaintiff where an unverified plea of *non assumpsit* is filed even though it is accompanied by a verified written notice to the effect that defendants would deny the execution of the notes sued on. *Bailey v. Valley Nat. Bank,* 127 Ill. 332. In *Lowman v. Aubery,* 72 Ill. 619, which was an action of assumpsit on a promissory note, a plea of *non assumpsit* and a plea of *non est factum,* sworn to were filed. The question was whether the note had been altered after its execution, from $500 to $600, and it was insisted that it was necessary for the plaintiffs to have proved that there was no alteration of the note before it was entitled to be admitted in evidence. In disposing of this contention, the court said, ''When the signature was admitted and the note offered, and, on inspection, there was no appearance of alteration to be discovered, the court could not do otherwise than admit it in evidence, leaving defendant to prove an alteration.''

In the instant case the declaration alleged the execution of these notes and averred that by their terms appellant promised to pay a definite sum at a definite time, with interest thereon at the rate of six per cent per annum from date until paid. Appellant denies that he so promised and put these allegations in issue by filing his plea of *non assumpsit.* Whether a note has been altered in a material particular can only be raised by a verified plea. *Lowman v. Aubery, supra.* Appellant verified his plea of the general issue and issue was joined upon that plea. By so doing, appellee, upon the trial, was required to prove the execution of the notes sued on and every material allegation of the declaration. *McPherson v. Board of Education,* 235 Ill. App. 426; *Nokomis Nat. Bank v. Hendricks,*

205 Ill. App. 54. Upon the trial, appellee proved the genuineness of appellant's signatures upon the notes and no alteration being apparent upon their face, they were properly admitted in evidence. To overcome this prima facie case, appellant, in order to maintain his plea, testified under oath that appellee was present when he placed his name upon these notes, that the payee assured him in the presence of appellee that there was to be no interest upon the notes and that he then signed them and at that time the word "seven" was scratched out and nothing written above it, the word "six" not being written in the notes at the time appellant executed them. Whether an alteration is material or not is a question of law for the court. *Milliken v. Marlin,* 66 Ill. 13. This evidence tended to prove that the notes had been materially altered since their execution and delivery, and inasmuch as the question of whether or not there had been a material alteration is a question of fact, appellant, under the pleadings, was entitled to have the issues submitted to a jury for determination. *Catlin Coal Co. v. Lloyd,* 180 Ill. 398.

But it is insisted by appellee that he is a bona fide holder for value, and even though there was a material alteration, the notes are not invalidated in his hands. Section 59 of the Negotiable Instruments Law, Cahill's St. ch. 98, ¶ 79, provides that every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as a holder in due course. If the evidence of appellant is true to the effect that these notes, when executed by him, bore no interest and appellee knew that fact and subsequently received them for value, knowing they had been materially altered since their execution, he cannot be said to be a holder in due course. Negotiable Instruments Law, sec. 52, Cahill's St. ch. 98, ¶ 72. Furthermore,

under the provisions of section 55 of the same act, Cahill's St. ch. 98, ¶ 75, if the testimony of appellant is true, when he told the representative of the payee, in the presence of appellee, that he would not sign these notes until he was assured they would not be sold, and the agent of the payee told him that the payee never sold its notes and that these notes would not be sold, the payee's title was defective when it negotiated these notes to appellee and the payee was guilty of a breach of faith when it did so, and appellee being a party thereto cannot be considered a holder in due course.

Appellant insists that inasmuch as the State Bank of Toulon had obtained judgment upon these notes and subsequently released that judgment of record, appellee was precluded from maintaining this suit. It is true that as between the parties to that suit, appellant here and the State Bank of Toulon, the notes were merged in the judgment obtained thereon, but appellee's liability to the bank was upon his contract as an indorser, and he having paid the bank had a perfect right to maintain this suit against the maker. So far as appellee was concerned the notes were not merged in the judgment obtained by the bank, and the payment to the bank by appellee had no other effect as to appellant, the maker, than had appellee taken up the notes from the bank without any judgment being taken thereon. *Pierce v. Jacobs,* 157 Ill. App. 441. We have examined the several cases cited by appellant, but there is nothing said in any of them in conflict with what is said in *Pierce v. Jacobs, supra.*

With the competent excluded evidence in the record, the court would not have been justified in directing a verdict for the plaintiff. *Bechtel v. Marshall,* 283 Ill. 486. For the error of the trial court, therefore, in excluding competent evidence and directing a verdict, the judgment is reversed and the cause remanded.

*Reversed and remanded.*